COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-03-321-CV

 

 

HCRA OF TEXAS, INC., D/B/A                                               APPELLANT

HEARTLAND HEALTH CARE 

CENTER - BEDFORD

 

                                                   V.

 

MARGIE FAY JOHNSTON,                                                     APPELLEES

TOMMY LLOYD JOHNSTON, 

GARY WAYNE JOHNSTON, 

AND DOUGLAS LEE JOHNSTON,


INDIVIDUALLY AND ON
BEHALF

OF THE ESTATE OF LLOYD
THOMAS 

JOHNSTON, DECEASED

 

                                              ------------

 

           FROM THE 352ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








This is a nursing home liability case.  The trial court rendered judgment on the jury=s
verdict for Appellees Margie Faye Johnston, Tommy Lloyd Johnston, Gary Wayne
Johnston, and Douglas Lee Johnston, individually and on behalf of the estate of
Lloyd Thomas Johnston, deceased (collectively Appellees or Johnstons) and
against Appellant HCRA of Texas, Inc. 
The primary issues we address involve the sufficiency of the evidence to
support the jury=s damage awards and malice
finding.  Because we hold that legally
insufficient evidence exists to support the jury=s malice
finding, we will reverse the judgment=s exemplary
damages award and render judgment that Appellees take nothing on their
exemplary damages claim.  Because the
evidence is legally and factually sufficient to support the jury=s damage
findings, we will affirm the remainder of the trial court=s
judgment.

II.  Factual Background

Lloyd Thomas Johnston, a seventy-one-year-old
man, underwent bypass surgery and, as a result of complications from that
surgery, was hospitalized for eighty-four days. 
During this time a feeding tube, a J-tube, assisted in feeding
Lloyd.  Lloyd was steadily recovering but
needed additional rehabilitation.  On May
21, 1999, the hospital discharged Lloyd to HCRA for rehabilitation.








Lloyd had colonized MSRA when he was admitted to
HCRA.[1]  Lloyd initially made progress at HCRA.  According to Lloyd=s son,
HCRA employees worked well with Lloyd and provided successful physical therapy
rehabilitation to Lloyd; the family saw an improvement in Lloyd=s
mobility and strength about every two days. 
But around June 10, 1999, after approximately three weeks at HCRA, Lloyd=s health
took a turn for the worse.  On June 15th,
after twenty-five days at HCRA, Lloyd=s
condition had severely deteriorated; Dr. Aziz Klavon ordered Lloyd transferred
immediately by ambulance to the hospital emergency room.  Lloyd died less than twenty-four hours
later.  Lloyd=s death
certificate indicates that he died of multi-system organ failure secondary to
sepsis, septic shock.  Lloyd=s death
certificate listed ischemic colitis as a tertiary cause of death.  Lloyd=s family
and experts presented evidence that at HCRA Lloyd was not properly cleaned or
repositionedCcausing him to develop decubitus
ulcers, he was not properly nourished, he was not given his medicines, his
urine output and body temperature were not measured, his room was not cleaned,
and HCRA kept inadequate records and fabricated some records. 

Appellees explain that their theory of the case
at trial was that HCRA injured Lloyd Aby,
among other things, allowing the formation of decubitus ulcers, causing serious
infection, and knowingly allowing [Lloyd] to lie unattended in his own
excrement.@ 
HCRA=s theory of the case was that
Lloyd=s sepsis
and death were the result of a new and independent causeCischemic
colitis.

 








III.  Procedural Background

The negligence special question submitted to the
jury was segregated into two subparts: 
did HCRA=s negligence proximately cause injuries
to Lloyd and did the negligence of HCRA proximately cause the death of
Lloyd.  The trial court also gave the
jury an instruction on new and independent cause.  The jury determined that HCRA=s
negligence did proximately cause injuries to Lloyd and determined that $17,805
for medical expenses and $75,000 for physical pain and mental anguish would
have fairly and reasonably compensated him for those injuries.  The jury also found that HCRA=s
alleged negligence did not proximately cause Lloyd=s death
and, consequently, the jury did not answer any of the wrongful death damages
questions. 

The jury further found that HCRA=s
director of nursing, Margie Burns, was employed by HCRA in a managerial
capacity and was acting in the scope of that capacity when she acted with
malice, causing harm to Lloyd.  The jury
found that $1,000,000 in punitive damages should be assessed against HCRA. The
trial court declined to apply the statutory punitive damages cap, concluding
that Lloyd=s estate=s claims
fell within the injury-to-the-elderly exception to the cap.  The trial court overruled all post-verdict
motions and rendered judgment on the jury=s
verdict.

 








IV.  Standing

In its first issue, HCRA asserts that Appellees
did not establish standing to bring a survival action on behalf of Lloyd=s
estate.  Since HCRA filed its appellate
brief in this case, the Texas Supreme Court decided Austin Nursing Center,
Inc. v. Lovato, 48 Tex. Sup. Ct. J. 624, 624-30, 2005 WL 1124764, at *4
(Tex. May 13, 2005) and Lorentz v. Dunn, 48 Tex. Sup. Ct. J. 630,
630-32,2005 WL 1124768, at *2 (Tex. May 13, 2005).  In both Lovato and Lorentz the
supreme court recognized that, in a survival action, the decedent's estate has
a justiciable interest in the controversy sufficient to confer standing.  Lovato, 2005 WL 1124764, at *4; Lorentz,
2005 WL 1124768, at *2.  Because the
pleadings in this case alleged that HCRA=s
negligent conduct injured Lloyd, his estate had standing to pursue the present
claim.  See Lovato, 2005 WL
1124764, at *4; Lorentz, 2005 WL 112468, at *2.  








HCRA also claims that Appellees did not prove
that they were Lloyd=s heirs and that no
administration of his estate was pending or necessary.  This contention does not, however, present an
issue of standing.  This issue is Amore
appropriately characterized as one of capacity.@  Lavato, 2005 WL 1124764, at *3.  Unlike standing, which may be raised for the
first time on appeal, a challenge to a party=s
capacity must be raised by a verified pleading in the trial court.  Id.; Tex.
R. Civ. P. 93(1)-(2).  Because
HCRA did not challenge Appellees=
capacity to sue for survival benefits in the trial court, its complaint that
Appellees failed to prove their legal authority to bring a survival action is
waived.  See generally Tex. R. App. P. 33.1 (discussing
prerequisites for preserving a complaint for appellate review).  Accordingly, we overrule HCRA=s first
issue.    

V.  Interest

HCRA complains in its eighth and ninth issues
that the judgment contains an incorrect starting date for, and rate of,
prejudgment interest as well as an incorrect postjudgment interest rate.  The trial court signed the judgment in this
case on August 14, 2003.  The judgment
awards $37,122 in  prejudgment interest
on the survival damages found by the jury and awards postjudgment interest at
the rate of ten percent per annum, compounded annually on the total judgment. 








We first address HCRA=s
complaint concerning the date on which prejudgment interest began to run.  HCRA argues that the judgment appears to
calculate prejudgment interest from June 15, 1999, the date Lloyd was
transported to the hospital emergency room, but A[t]here
is no way to determine from the face of the judgment how this award was
calculated.@ 
HCRA, as the appellant, bears the burden of establishing error occurred
in the trial court and that the error probably caused rendition of an improper
judgment.  See Tex. R. App. P. 44.1(a).  Prejudgment interest is required in certain
cases, including a personal injury case. 
See Tex. Fin. Code Ann. ' 304.102
(Vernon Supp. 2004-05).  Lloyd=s
estate, through Lloyd=s heirs, brought a personal
injury action and recovered personal injury damages,[2]
but HCRA does not propose or suggest any alternative date on which prejudgment
interest should properly have begun to run. 
Nor does HCRA set forth any interest computations alleging or
demonstrating that the judgment=s award
is incorrect.[3]  HCRA points out that the judgment does not
explain its computation of prejudgment interest nor indicate the date on which prejudgment
interest began to run; we hold that HCRA=s mere
assertion that the computation is incorrect does not establish trial court
error.  We overrule this portion of HCRA=s eighth
issue.













The balance of HCRA=s eighth
and ninth issues challenge the judgment=s ten
percent postjudgment interest award. 
HCRA argues that House Bill 2415's amendments[4]
to the finance code apply to this case so that the postjudgment interest rate
should be five percent.[5]  HCRA did not raise a complaint about the
judgment=s
interest rate or argue the applicability of House Bill 2415 in any timely filed
postjudgment motion.  HCRA timely filed a
motion for new trial, and in the alternative, a suggestion for remittitur and a
motion for judgment notwithstanding the verdict.  But neither of these documents challenged the
interest rate utilized in the judgment or argued that the amendments to the
finance code effectuated by House Bill 2415 were applicable.  HCRA did raise the interest issue in a
supplemental motion for new trial, but the supplemental motion was not timely
filedCit was
filed forty-seven days after the judgment was signedCso it is
a nullity and preserves nothing for our review. 
See Tex. R. Civ. P.
329b(a), (b) (requiring motion for new trial and amended motion for new trial
to be filed within thirty days of date of judgment); Moritz v. Preiss,
121 S.W.3d 715, 720 (Tex. 2003) (holding untimely filed amended motion for new
trial is a nullity for purposes of preserving issues for appellate review); Pringle
v. Moon, 158 S.W.3d 607, 612 n.2 (Tex. App.CFort
Worth 2005, no pet.) (holding argument that House Bill 2415's effective date
applied instead of House Bill 4's effective date was waived if not raised in
trial court). Consequently, the postjudgment interest arguments set forth in
the balance of HCRA=s eighth issue and in its ninth
issue are not preserved for our review. 
We overrule those issues.

VI.  Sufficiency of the Evidence

In its second, third, and fourth issues,
respectively, HCRA challenges the legal and factual sufficiency of the evidence
to support the jury=s finding that HCRA=s
negligence proximately caused an injury to Lloyd, the jury=s
economic and noneconomic damage awards, and the jury=s
finding that the harm to Lloyd resulted from malice attributable to HCRA.

A.  Standards
of Review

1.  Legal
Sufficiency








In determining a Ano evidence@ issue we are to
consider only the evidence and inferences that tend to support the finding of
the disputed factCunless a reasonable juror could not give
credit to such evidence or inferences.  See
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  We are to disregard all evidence and
inferences to the contrary to the disputed factCunless a
reasonable juror could not disregard such evidence or inferences.  Id. 
But we are not to weigh the evidence or make our own credibility
determinations.  Bradford v. Vento, 48
S.W.3d 749, 754 (Tex. 2001); Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); In re King's Estate,
150 Tex. 662, 244 S.W.2d 660, 661 (1951).  Anything more than a scintilla of evidence is
legally sufficient to support the finding. 
Cont=l Coffee, 937 S.W.2d at 450; Leitch v.
Hornsby, 935 S.W.2d 114, 118 (Tex. 1996). 
More than a scintilla of evidence exists if the evidence furnishes some
reasonable basis for differing conclusions by reasonable minds about the
existence of a vital fact.  Rocor Int=l, Inc. v. Nat=l Union Fire Ins.
Co.,
77 S.W.3d 253, 262 (Tex. 2002).

2.  Factual
Sufficiency

An assertion that the evidence is Ainsufficient@ to
support a fact finding means that the evidence supporting the finding is so
weak or the evidence to the contrary is so overwhelming that the answer should
be set aside and a new trial ordered.  Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). 
We are required to consider all of the evidence in the case in making
this determination, not just the evidence that supports the finding.  Mar. Overseas Corp. v. Ellis, 971
S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).

3.  Legal Sufficiency Challenge in Light of Clear
and 

Convincing
Evidence Burden of Proof

 








The Texas Supreme Court recently clarified the
appellate standards of review to be applied to a legal sufficiency challenge in
light of the clear and convincing burden of proof.  Accord In re J.F.C., 96 S.W.3d 256,
264‑68 (Tex. 2002) (discussing legal sufficiency review in termination of
parental rights appeal).  A legal
sufficiency review of a finding required to be based on clear and convincing
evidence must take into consideration whether the evidence is such that a fact
finder could reasonably form a firm belief or conviction about the truth of the
matter required to be established by clear and convincing evidence.  Id.; see also Kroger Tex. Ltd.
P'ship v. Suberu, 113 S.W.3d 588, 601 (Tex. App.CDallas
2003, pet. granted) (applying standards of review enunciated in J.F.C.
to legal sufficiency challenge to evidence of malice).  We are to "look at all the evidence in
the light most favorable to the finding to determine whether a reasonable trier
of fact could have formed a firm belief or conviction that its finding was
true."  J.F.C., 96 S.W.3d at
266.

B.  The Jury=s Finding that HCRA=s Negligence

Proximately
Caused Injuries to Lloyd

 

Dr. Klavon was the medical director at HCRA
during Lloyd=s stay there. Dr. Klavon
testified that Lloyd was admitted to HCRA after bypass surgery for two to three
weeks of rehabilitation.  Lloyd steadily
improved during his first two to three weeks at HCRA, however, Lloyd then
became sick, experiencing vomiting and diarrhea.  








Margie Burns, the director of nursing at HCRA,
testified that Lloyd was taking the medicine Lasix and that it was important to
monitor the fluid input and output of a patient on Lasix because Lasix is a
diuretic that can contribute to dehydration. 
Dr. Richard Thorner likewise testified that Lasix may contribute to
dehydration, especially in a patient with diarrhea.  Dr. Gunda Kirk and Dr. David Stump testified
that because Lloyd had a feeding tube and a catheter, it should have been very
simple for the HCRA nurses to measure his fluid input and output and to keep
him hydrated and nourished.  Nurse Burns
testified that the standard of care required HCRA=s nurses
and nurses= aides to keep a patient
nourished and hydrated and to chart a patient=s fluid
input and output.  She admitted Lloyd=s fluid
input and output were not properly charted as required by the standard of
care.  Dr. Klavon testified that Lloyd
was not well nourished[6]
when he left HCRA and was dehydrated. 








Lloyd=s family
testified that they visited Lloyd daily at HCRA and that they did not see the
nurses move or reposition Lloyd.  Lloyd=s
youngest son testified that after Lloyd became sick and developed diarreaha, he
would ring for the nurses, but they would not come; they left him laying in his
feces.  Toward the end of Lloyd=s stay
at HCRA, Lloyd=s family observed two ulcers on
Lloyd=s back,
behind his hip bones.  HCRA=s
records concerning Lloyd do not document the existence of, or any care or
treatment for, these ulcers.  When Lloyd
was transferred by ambulance on June 15, 1999 to the hospital emergency room,
physicians documented two stage three decubitis ulcers on Lloyd=s
back.  The ulcers were necrotic and
oozing blood.  Dr. Kirk testified that
decubitus ulcers are completely preventable if the patient is repositioned
every two hours.  The standard of care is
to reposition a patient who cannot turn himself every two hours; if the HCRA
nurses had repositioned Lloyd, Dr. Kirk would have expected him to not have any
ulcers.  

Thus, the evidence and inferences tending to support the jury=s finding that
HCRA=s negligence
proximately caused injuries to LloydCmalnourishment,
dehydration, and decubitus ulcersCthat could have
been given credit by reasonable jurors includes expert testimony that the
standard of care requires that patients who are unable to reposition themselves
be repositioned every two hours, that decubitus ulcers do not develop if the
repositioning demanded by the standard of care occurs, that it should have been
easy for HCRA to keep Lloyd adequately nourished and hydrated because he had a
feeding tube, that  the standard of care
requires patients be adequately hydrated and nourished, and that Lloyd was not
adequately nourished or hydrated when he left HCRA.  Also, 
Lloyd=s family members observed decubitus ulcers
on Lloyd=s lower back while
Lloyd was at HCRA; hospital emergency room records document that Lloyd had two
stage three decubitus ulcers on his back when he arrived at the emergency room
on June 15, 1999. 








The contrary evidence and inferencesCNurse Burns=s denial that
Lloyd=s ulcers were
present when he left HCRA, her incredible testimony that it was possible the
decubitus ulcers occurred during the ten-minute ride to the hospital emergency
room although she had never seen such a phenomenon, and an unsigned note in
Lloyd=s chart that a
nurse asked him to roll over one night and he refusedCcould have been
disregarded by a reasonable juror.  We
hold that the evidence is legally sufficient to support the jury=s finding that
HCRA=s negligence
proximately caused injuries to Lloyd.  See
City of Keller, 168 S.W.3d at 827; Bradford, 48 S.W.3d at 754.  Moreover, considering all of the
evidence, the evidence supporting the jury=s
finding that HCRA=s negligence proximately caused
injuries to Lloyd is not so weak nor is the evidence to the contrary, set forth
above, so overwhelming that the jury=s answer
should be set aside and a new trial ordered. 
See Garza, 395 S.W.2d at 823. 
We overrule HCRA=s second issue.  

C.  The
Jury=s Economic and Noneconomic
Damage Awards

The jury found that the reasonable expense of the
necessary medical and hospital care Lloyd received before his death as a result
of his injuries was $17,805.  The jury
further found that $75,000 would fairly and reasonably compensate Lloyd for the
physical pain and mental anguish he experienced before his death as a result of
his injuries.  In its third issue, HCRA
claims that legally and factually insufficient evidence exists to support
either of these damage awards.













HCRA claims that the evidence is legally and
factually insufficient to support the jury=s award
of $17,805 in medical expenses because the jury did not segregate the damages
caused by HCRA=s negligence from the medical
costs that would have accrued without HCRA=s
negligenceCthe medical expenses related to
Lloyd=s
ischemic colitis.[7]  The billing records from the hospital
following Lloyd=s June 15, 1999 transfer were
submitted pursuant to Texas Civil Practice and Remedies Code section
18.001.  See Tex. Civ. Prac. & Rem. Code Ann. ' 18.001
(Vernon 1997).  The total amount of Lloyd=s
hospital bill from June 15, 1999 until his death on June 16, 1999 was
$17,190.85.  The records establish that
Lloyd stayed in the hospital ICU one night before he died; that he was treated
for dehydration,[8]
malnutrition, and decubitus ulcers; and that blood work and other tests were
performed.  No evidence exists that this
treatment and these tests were necessitated by ischemic colitis.[9]  In fact, Lloyd was not diagnosed with
ischemic colitis until it was noted on his death certificate after an autopsy. 

It is true that a plaintiff may not force a
defendant to pay his medical expenses for treatment of a pre-existing condition
not caused by the defendant=s
negligence.  See Texarkana Mem=l Hosp.,
Inc. v. Murdock, 946 S.W.2d 836, 840 (Tex. 1997) (holding
plaintiff may recover only for medical expenses from treatment made necessary
defendant=s negligence where
differentiation is possible between treatment made necessary by defendant and
treatment for pre-existing conditions). 
Here, however, the jury found that the purported pre-existing injuriesCthat is,
dehydration, malnutrition, and decubitus ulcersCwere
proximately caused by HCRA=s
negligence.  Accord Linan v. Rosales,
155 S.W.3d 298, 306 (Tex. App.CEl Paso
2004, pet. denied) (recognizing defendant not responsible for costs associated
with pre-existing cancer but only for increased costs necessitated by alleged
negligent delay in diagnosis).  We
overrule the portion of HCRA=s third
issue challenging the jury=s damage
award for $17,805 in medical expenses.[10]









Next, HCRA contends that legally and factually
insufficient evidence exists to support the jury=s award
of $75,000 to Lloyd=s estate for the physical pain
and mental anguish he suffered prior to his death.  Lloyd was conscious during his entire stay at
HCRA.  Mr. Hunter Mack Baldridge, the
administrator at HCRA, testified that he has seen decubitus ulcers and that
they are nasty and look painful.  The
emergency room personnel documented Lloyd=s two
decubitus ulcers as stage three, neucrotic, and oozing blood.  Lloyd=s family
members testified that Lloyd complained that his back hurt him.   








The process of awarding damages for amorphous,
discretionary injuries such as mental anguish or pain and suffering is
inherently difficult because the alleged injury is a subjective, unliquidated,
nonpecuniary loss.  Dollison v. Hayes,
79 S.W.3d 246, 249 (Tex. App.CTexarkana
2002, no pet.). The presence or absence of pain, either physical or mental, is
an inherently subjective question.  Id.  No objective measures exist for analyzing
pain and suffering damages.  See Hicks
v. Ricardo, 834 S.W.2d 587, 591 (Tex. App.CHouston
[1st Dist.] 1992, no writ).  Once the
existence of some pain and suffering has been established, however, there is no
objective way to measure the adequacy of the amount awarded as compensation.  Dawson v. Briggs, 107 S.W.3d 739, 751
(Tex. App.CFort Worth 2003, no pet.). 

A party may establish the existence of conscious
pain and suffering by circumstantial evidence. 
Borth v. Charley's Concrete Co., 139 S.W.3d 391, 395 (Tex. App.CFort
Worth 2004, pet. denied); Landreth v. Reed, 570 S.W.2d 486, 492 (Tex.
Civ. App.CTexarkana 1978, no writ).  Pain and suffering may be inferred or
presumed as a consequence of severe injuries. 
Borth, 139 S.W.3d at 395; City of Austin v. Selter, 415
S.W.2d 489, 501 (Tex. Civ. App.CAustin
1967, writ ref'd n.r.e.).  The duration
of the pain and mental anguish is an important consideration.  Sunbridge Healthcare Corp. v. Penny,
160 S.W.3d 230, 250 (Tex. App.CTexarkana
2005, no pet.).  The jury is given a
great deal of discretion in awarding an amount of damages it deems appropriate
for pain and suffering.  Texarkana
Mem'l Hosp., 946 S.W.2d at 841; Dollison, 79 S.W.3d at 249.  Despite this broad discretion, there must
"be some evidence to justify the amount awarded," as a jury
"cannot simply pick a number and put it in the blank."  Saenz v. Fid. & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).








As long as sufficient probative evidence exists
to support the jury's verdict, neither the reviewing court nor the trial court
is entitled to substitute its judgment for that of the jury.  Larson v. Cactus Util. Co., 730 S.W.2d
640, 641 (Tex. 1987); J. Wigglesworth Co. v. Peeples, 985 S.W.2d 659,
665 (Tex. App.CFort Worth 1999, pet.
denied).  A verdict will be set aside on
appeal only where the record clearly indicates that the award was based on
passion, prejudice, or improper motive, or is so excessive as to shock the
conscience.  Transit Mgmt. Co. of
Laredo v. Sanchez, 886 S.W.2d 823, 826 (Tex. App.CSan
Antonio 1994, no writ); Weingarten, Inc. v. Gauthier, 305 S.W.2d 181,
197 (Tex. Civ. App.CBeaumont 1957, no writ).








HCRA=s
challenge to the jury=s physical pain and mental
anguish award is limited to three sentences and simply claims that the record
is devoid of any evidence that Lloyd suffered pain or anguish.  Lloyd=s family
saw the decubitus ulcers on Lloyd=s back,
which medical records and expert testimony established were stage three,
necrotic, and oozing blood.  Lloyd, who
was fully conscious, complained to his family that his back hurt, indicating he
was experiencing physical pain.  Further,
Lloyd was malnourished, causing his body to break down muscle to meet its
caloric needs.  The jury could have reasonably
inferred from this evidence that Lloyd experienced physical discomfort, pain,
and suffering from the injuries that the jury found proximately caused by
HCRA.  See City of Keller, 168 S.W.3d at
827; Bradford, 48 S.W.3d at 754. 
We overrule the portion of HCRA=s third
issue challenging the legal sufficiency of the evidence to support the jury=s damage
award of $75,000 for physical pain and mental anguish.

We now turn to the factual sufficiency
challenge.  Even though each case must be
judged on its own unique facts, it is proper to consider other approved awards
in similar cases to determine if an award for pain and suffering is
excessive.  Sunbridge Healthcare
Corp., 160 S.W.3d at 250.  In Sunbridge,
the court held that an award of one million dollars was not excessive to
compensate the plaintiff for physical pain and mental anguish suffered from
injuries sustained in falls.  Id.  In Cresthaven Nursing Residence v. Freeman,
the court that an award of one million dollarsCremitted
down from four million dollarsCwas not
excessive to compensate the plaintiff for physical pain and mental anguish
suffered from two broken legs sustained in a fall.  134 S.W.3d 214, 228-232 (Tex. App.CAmarillo
2003, no pet.).  In Guzman v. Guajardo,
the court held that an award of six hundred thousand dollars was not excessive
to compensate a young boy who endured fifteen minutes of pain sustained in a
car accident before dying.  761 S.W.2d
506, 512 (Tex. App.CCorpus Christi 1988, writ
denied).  Having thoroughly reviewed the
record and applying the appropriate standard of review, we conclude that the
evidence is factually sufficient to support the jury=s damage
award of $75,000 for Lloyd=s
physical pain and mental anguish.  We
overrule HCRA=s third issue.








D.  The Jury=s Finding that the Harm
to Lloyd Resulted

From
Malice Attributable to HCRA 

 

Special question number 7 of the court=s charge
asked the jury whether it found by clear and convincing evidence that the harm
to Lloyd resulted from malice attributable to HCRA.  The charge then defined clear and convincing
evidence and malice and instructed the jury that in order for malice to be
attributable to HCRA it must find that Nurse Burns was employed by HCRA in a
managerial capacity and was acting in the scope of that capacity.  The charge explained that 

AMalice@ means an
act or omission by [Nurse] Burns:

(a) which, when viewed
objectively from the standpoint of [Nurse] Burns at the time of its occurrence,
involved an extreme degree of risk, considering the probability and magnitude
of the potential harm to others; and 

 

(b) of which [Nurse]
Burns had actual, subjective awareness of the risk involved, but nevertheless
proceeded with conscious indifference to the rights, safety, or welfare of
others.[11]

 

The jury answered Ayes@ to
special question number 7.








Experts testified that decubitus ulcers are
preventable if the patient is repositioned every two hours and that the
standard of care requires such repositioning if the patient is unable to
reposition himself.  Expert testimony
established that the existence of a J-tube does not prevent a patient from
rolling onto his stomach or from sleeping on his stomach.  And although Lloyd=s
mobility and strength initially improved at HCRA, at some point he became
incapable of repositioning himself. 
Lloyd=s family members testified that
in the last week of Lloyd=s stay at HCRA they noticed two
ulcers on his lower back.  Lloyd=s
hospital records establish that upon admission from HCRA he had two stage
three, necrotic, decubitus ulcers that were oozing blood.  And HCRA=s
records do not document the existence of, or any care for, these ulcers.  Based on this evidence, Appellees argue that
HCRA Aeither
ignored [Lloyd=s] worsening injuries or falsely
claimed to have examined him when it did not@  and that Asuch
evidence is sufficient to support the jury=s
conclusion that [HCRA] acted with conscious indifference to the rights of
[Lloyd] despite awareness of an extreme risk of serious harm.@ 








Generally, the definition of malice under civil
practice and remedies code section 41.001(7)(B) consists of two
components:  one objective and one
subjective.  See Columbia Med. Ctr. of
Las Colinas v. Bush ex rel. Bush, 122 S.W.3d 835, 854 (Tex. App.CFort
Worth 2003, pet. denied).  Objectively,
the defendant's conduct must involve an extreme risk of harm, a significantly
higher threshold than the objective reasonable person test for negligence.  Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 22 (Tex. 1994).  To satisfy the
objective malice prong, the defendant's conduct must, viewed objectively from
the actor's standpoint, involve an extreme degree of risk. Lee Lewis
Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001).  "Extreme risk" means not a remote
possibility of injury or even a high probability of minor harm, but rather the
likelihood of serious injury to the plaintiff.  Id. 
Subjectively, the defendant must have actual awareness of the extreme
risk created by the conduct.  Id.  Evidence of simple negligence is not enough
to prove either the objective or subjective components of malice.  See Mobil Oil Corp. v. Ellender, 968
S.W.2d 917, 921 (Tex. 1998).













The evidence concerning HCRA=s breach
of the standard of care by failing to reposition Lloyd or to notice or treat
his decubitus ulcers after his health took a turn for the worse during his last
seven to ten days at HCRA is not, standing alone, evidence of the type of acts
or omissions that, viewed from the actor=s
standpoint, pose Aan extreme degree of risk,
considering the probability and magnitude of the potential harm to others.@  Compare Universal Servs. Co. v. Ung,
904 S.W.2d 638, 642 (Tex. 1995) (holding failure to adequately protect road
worker from specific hazards, including the pothole in the road, did not create
"likelihood of serious injury" required to satisfy objective gross
negligence prong) with Lee Lewis Constr., Inc., 70 S.W.3d at 786
(holding obvious risk of death from falling ten stories was extreme risk and
satisfied objective gross negligence prong); Mobil Oil Corp., 968 S.W.2d
at 922-23 (holding known probability of suffering leukemia from benzene exposure
was extreme risk and satisfied objective gross negligence prong); Columbia
Med. Ctr. of Las Colinas, 122 S.W.3d at 855 (holding known risk that
administration of drug to person with decedent=s
condition was contraindicated and could be lethal was extreme risk and
satisfied objective malice prong); Sears, Roebuck & Co. v. Kunze,
996 S.W.2d 416, 428 (Tex. App.CBeaumont
1999, pet. denied) (holding evidence of reported amputations and other severe
injuries occurring when consumers used defendant=s radial
saw that lacked lower blade guard constituted evidence of extreme risk and
satisfied objective gross negligence prong). 
Here, the evidence presented does not demonstrate that, viewed
objectively from the standpoint of Nurse Burns, the acts or omissions upon
which Appellees premise their exemplary damages claim posed an Aextreme
degree of risk@ to Lloyd.[12]  See Dillard Dep=t
Stores, Inc. v. Silva, 148 S.W.3d 370, 374 (Tex. 2004) (recognizing
that conduct, although extreme and outrageous, did not expose plaintiff to
extreme risk of substantial harm). 
Viewing all the evidence in the light most favorable to the jury=s malice
finding, we hold that a reasonable trier of fact could not have formed a firm
belief or conviction that from Nurse Burns=s
standpoint the risk presented to Lloyd was an extreme risk of serious
injury.  See J.F.C., 96 S.W.3d at
266.  Therefore, we sustain HCRA=s fourth
issue.








Because we sustain HCRA=s fourth
issue and hold that the evidence is legally insufficient to support the jury=s malice
finding, we need not address HCRA=s fifth
issue challenging the legal and factual sufficiency of the evidence to support
the $1,000,000 exemplary damages award, HCRA=s sixth
issue alleging that the trial court erred by refusing to apply the statutory
exemplary damages cap,[13]
or HCRA=s
seventh issue alleging that the $1,000,000 exemplary damages award is
unconstitutional and grossly excessive.  See
Tex. R. App. P. 47.1.

VII.  Conclusion

Having sustained HCRA=s fourth
issue, we reverse the judgment=s award
of exemplary damages and render judgment that Appellees take nothing on their
exemplary damages claim.  Having
overruled HCRA=s other issues, we affirm the
remainder of the trial court=s
judgment.

 

 

 

SUE
WALKER

JUSTICE

 

PANEL A:   CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DELIVERED: November 3,
2005











[1]MSRA is Methicillin
Resistant Staphyloccus Aureus, a type of bacteria that can Acolonize@ or exist in a person
without causing an infection; it is not uncommon in patients in hospitals or
nursing homes.  





[2]A decedent's personal
injury action survives death and may be prosecuted on his or her behalf.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 71.021(a) (Vernon 1997).





[3]Likewise, neither HCRA=s postjudgment motions in
the trial court nor its arguments at the hearings on these motions provide this
information. 





[4]See Act of June 20, 2003,
78th Leg., R.S., ch. 676, ' 2(a), 2003 Tex. Gen. Laws 2096, 2097 (effective
date June 20, 2003) (amending Tex. Fin.
Code Ann. ' 304.003(c) (Vernon Supp.
2004-05)).





[5] During the regular 2003
legislative session, the legislature passed House Bills 4 and 2415, both of
which contained nearly identical amendments to the finance code that
effectively reduced the postjudgment interest rate from ten to five
percent.  But House Bill 4 had an
effective date of September 1, 2003 while House Bill 2415 had an effective date
of June 20, 2003.  See id.
and Act of June 2, 2003, 78th Leg., R.S., ch. 204, ' 6.04, 2003 Tex. Gen.
Laws 862, 862 (effective date Sept. 1, 2003) (effectuating same amendment to Tex. Fin. Code Ann. ' 304.003(c)). 





[6]Blood tests documented a
decline in Lloyd=s nutritional status; he
was Amalnourished,@ not getting enough
calories so that his body was breaking down its own muscle to satisfy its
caloric needs. 





[7]HCRA does not argue that
the treatment Lloyd received was not necessary or that the hospital=s charges were not
reasonable.





[8]One of the nurses at the
hospital told Doug Johnston that, Awe=ve got him [Lloyd] pumped full of fluids.@ 





[9]HCRA=s theory of the case,
which the jury apparently believed because it refused to find that HCRA=s negligence caused Lloyd=s death, was that Lloyd
died from ischemic colitis, a cause of death independent from any negligence by
HCRA.





[10]Although HCRA=s issue is framed as a
legal and factual sufficiency issue, its brief makes no factual sufficiency
challenge to the jury=s medical expenses
award.  We have addressed HCRA=s only briefed
issue:  That the medical expenses were
required to be segregated but were not.





[11]See Act of June 2, 2003,
78th Leg., R.S., ch. 204, ' 13.02, sec. 41.001(7)(B)(I), 2003 Tex. Gen. Laws
887, 887 (amended 2003) (current version at Tex.
Civ. Prac. & Rem. Code Ann. ' 41.001(7) (Vernon Supp. 2004-05)).





[12]We do not hold that the
failure to recognize and treat decubitus ulcers may never constitute an extreme
risk of serious injury.  We simply hold
that no evidence exists that the approximately ten-day failure to do so in this
case constituted an extreme risk of serious injury.  





[13]Appellees asserted that
the injury-to-an-elderly-individual exception to the cap applied here, but no
jury question was submitted other than the malice question.  See Act of April 20, 1995, 74th Leg.
R.S., ch. 19, ' 46, 1995 Tex. Gen. Laws
108, 113, amended by Act of June 11, 2003, 78th Leg., R.S., ch. 204, ' 13.06, sec.
41.008(c)(7), 2003 Tex. Gen. Laws 847, 888-89 (amended to add Abut not if the conduct
occurred while providing health care as defined by Section 74.001")
(current version at Tex. Civ. Prac.
& Rem. Code Ann. ' 41.008(c)(7) (Vernon Supp. 2004-05)). We are
doubtful that the jury=s malice finding alone
triggers the injury-to-an-elderly-individual exception to the cap, especially
because the charge did not define malice as Aa specific intent by the defendant to cause
substantial injury to the claimant.@  See
Signal Peak Enters. of Tex., Inc. v. Bettina Inv., Inc., 138 S.W.3d 915,
927 (Tex. App.CDallas 2004, pet.
stricken); see also Mission Res., Inc. v. Garza Energy Trust, 166 S.W.3d
301, 315-16 (Tex. App.CCorpus Christi 2005, pet.
filed) (holding exemplary damage cap inapplicable where jury made specific
finding beyond reasonable doubt that defendant had committed felony
theft).  However, in our disposition of
the appeal, we do not reach this issue.