AUSTIN NURSING CENTER, INC.
d/b/a Austin Nursing Center; Century
Care of America, Inc.; Paul Gray;
Paul Hanlon; and Guadalupe Zamo-
ra, M.D., Petitioners,

v.

Pauline Wilson LOVATO, Independent
Administratrix of the Estate of Mar-
garita Torres Wilson, Respondent.

No. 03–0659.

Supreme Court of Texas.

Argued Nov. 10, 2004.

Decided May 13, 2005.

Rehearing Denied Oct. 14, 2005.

Ruth G. Malinas, Christopher John Deeves, Cynthia Day Grimes, Ball & Weed, P.C., San Antonio, Laura Swarbrick, David M. Davis, V. Elizabeth Ledbetter and Peter R. Meeker, Davis & Wilkerson, P.C., Austin, for Petitioner.

Alfonso L. Melendez, Anna Nigel Marketto, Melendez & Marketto, P.C., El Paso, and Raul Steven Pastrana, Pastrana Law Firm, Austin, for Respondent.

Chief Justice JEFFERSON delivered the opinion of the Court.

On behalf of her deceased mother, Pauline Wilson Lovato filed a survival action against Guadalupe Zamora, M.D., Austin Nursing Center, Inc., and related entities and individuals (collectively "Austin Nursing Center"). In her original petition, filed within the statute of limitations, Lovato asserted that she was the personal representative of her mother's estate. In actuality, Lovato was not appointed independent administrator until after the statute of limitations on the survival action expired. Austin Nursing Center moved for summary judgment, arguing that Lovato lacked standing to bring the survival action at the time the case was filed, and the trial court granted the motion. The court of appeals reversed, holding that Lovato's later-acquired status as the estate's personal representative gave her standing, which related back to the time of the lawsuit's original filing.

We hold that the standing doctrine's requirements were satisfied and that the trial court had jurisdiction to hear the case. We further hold that although Lovato may have lacked capacity to bring the survival action at the time the lawsuit was filed, any defect in her capacity was later cured by her appointment as the estate's administrator. Accordingly, we affirm the court of appeals' judgment.

# I

## Background

Ninety-two-year-old Margarita Torres Wilson allegedly developed pressure ulcers

while a resident at Austin Nursing Center from May to June 1998. She was discharged from the center in June and transferred to another care facility. Wilson died on August 18, 1998.

On January 27, 2000, before limitations expired, Lovato filed this survival action on behalf of her mother's estate pursuant to the survival statute, which provides that "[a] personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM.CODE § 71.021(b). Lovato alleged that she was the "Personal Representative" of Wilson's estate, but also that "no administrator [of the estate] ha[d] been appointed." Lovato asserted that Austin Nursing Center's medical negligence harmed Wilson, resulting in physical pain and impairment, mental anguish, medical expenses, and disfigurement.

Two months after she brought the survival action, Lovato filed an application for independent administration of Wilson's estate in the probate court, asking that she be appointed administrator of the estate and alleging that her mother died intestate, had no real property, and had personal property valued at less than $2,000. The probate court appointed Lovato administrator nearly two years later, on May 9, 2002, after the statute of limitations on the survival action had expired.

On April 22, 2002, Austin Nursing Center moved for summary judgment, arguing that because Lovato did not prove she was an heir or the estate's personal representative, she lacked standing to bring the survival claim, depriving the trial court of subject matter jurisdiction. Austin Nursing Center argued alternatively that the survival claim was barred by limitations because a party with standing did not timely assert it.

Lovato filed her fourth amended petition and her first supplemental petition on May 20, 2002. In these petitions, Lovato alleged that she was the "Independent Administratrix" of her mother's estate. Lovato then responded to Austin Nursing Center's motion for summary judgment, arguing that her fourth amended petition related back; that she fulfilled the purpose and intent of the statute of limitations by notifying the defendants of the survival claim; and that she had standing to bring the survival claim because she was an heir at the time the original petition was filed, and no administration was pending or necessary.

On July 18, 2002, the trial court granted Austin Nursing Center's motion for summary judgment and dismissed the survival action. The court of appeals reversed the trial court's judgment, holding that (1) Lovato had "filed her original petition within the limitations period, with authority to bring the survival action as an heir"; and (2) "Lovato became the independent administrator of her mother's estate and filed an amended petition in that capacity." 113 S.W.3d 45, 55. The court reasoned that "Lovato cured her defective standing as personal representative of the estate," because her post-limitations petition "relate[d] back to the original filing of her case." Id. (citing TEX. CIV. PRAC. & REM. CODE § 16.068). Thus, the court of appeals concluded that the trial court had jurisdiction to hear the survival action. Id.

We granted Austin Nursing Center's petition for review. 47 Tex. Sup.Ct. J. 658 (June 18, 2004).

### III

### Discussion

Austin Nursing Center argues that the court of appeals erred because, under our decision in *Shepherd v. Ledford,* Lovato had standing as an heir only if she could plead and prove that there was no administration pending in probate court and

none was necessary. *See Shepherd v. Ledford*, 962 S.W.2d 28, 31–32 (Tex.1998). According to Austin Nursing Center, Lovato failed to meet this burden. Austin Nursing Center also contends that the court of appeals incorrectly permitted Lovato's post-limitations appointment as administrator to cure her pre-limitations lack of standing, an incurable jurisdictional defect.

Lovato contends that the court of appeals' judgment should be affirmed because she had standing as an heir when she originally filed the survival action within the limitations period. Alternatively, Lovato contends that even if she lacked standing as an heir when she originally filed the survival action, her post-limitations amended petition, which she filed as independent administrator of Wilson's estate, related back to the original filing of the survival action, thereby correcting any deficiency in standing. We turn first to the issue of standing.

## A

### Standing Versus Capacity

The parties dispute whether Lovato had standing to assert a survival claim on behalf of Wilson's estate. Although courts and parties have sometimes blurred the distinction between standing and capacity,[1] we believe that the issue presented here is more appropriately characterized as one of capacity.

■ A plaintiff must have both standing and capacity to bring a lawsuit. *Coastal Liquids Transp.*, 46 S.W.3d at 884. The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome, whereas the issue of capacity "is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1559, at 441 (2d ed.1990). We have previously distinguished between these two threshold requirements as follows:

A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal au-

1. *See, e.g., Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex.2001) ("Although the parties have argued the issue before us and below as one of standing, the real issue is Coastal's capacity to sue."); *Light v. Wilson*, 663 S.W.2d 813, 814 (Tex.1983) ("The *capacity* addressed in Rule 93(c), Tex.R. Civ. P., is Light's *standing* to assert or defend the action before the Court.") (emphasis added); *Freedman v. Briarcroft Prop. Owners, Inc.*, 776 S.W.2d 212, 215 (Tex.App.-Houston [14th Dist.] 1989, writ denied) ("Appellants' challenge that appellee lacks standing is, in actuality, a challenge to appellee's capacity to sue."); *see also* 5 WILLIAM V. DORSANEO III, TEXAS LITIGATION GUIDE § 70.06[2] (2005) ("Texas courts have had considerable difficulty in defining the relationship of the twin doctrines of capacity and standing."); 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1542, at 330 (2d ed. 1990)("[C]ourts and attorneys frequently have confused the requirements for standing with those used in connection with ... capacity principles."); *Firestone v. Galbreath*, 976 F.2d 279, 283 n. 1 (6th Cir.1992); *Glickstein v. Sun Bank Miami, N.A.*, 922 F.2d 666, 670 (11th Cir.1991) ("[T]he doctrine of capacity is often incorrectly considered under the rubric of a standing claim."); *Scanwell Labs. Inc. v. Shaffer*, 424 F.2d 859, 861 (D.C.Cir.1970) (noting that "[s]tanding has been called one of the most amorphous concepts in the entire domain of the public law" and describing "the mental gymnastics through which the courts have passed in determining standing issues"); *Cmty. Bd. 7 of Borough of Manhattan v. Schaffer*, 84 N.Y.2d 148, 615 N.Y.S.2d 644, 639 N.E.2d 1, 3 (1994) ("[T]he concept of capacity is often confused with the concept of standing, but the two legal doctrines are not interchangeable ....").

thority to act, regardless of whether it has a justiciable interest in the controversy. *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996); *see also* 6A WRIGHT, MILLER, & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1559, at 441 ("Capacity has been defined as a party's personal right to come into court, and should not be confused with the question of whether a party has an enforceable right or interest.").

■ In Texas, the standing doctrine requires that there be (1) "a real controversy between the parties," that (2) "will be actually determined by the judicial declaration sought." *Nootsie*, 925 S.W.2d at 662 (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993)). Implicit in these requirements is that litigants are "properly situated to be entitled to [a] judicial determination." 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND EDWARD H. COOPER, WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 3531, at 338–39 (2d ed.1984). Without standing, a court lacks subject matter jurisdiction to hear the case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 443. Thus, the issue of standing may be raised for the first time on appeal. *Id.* at 445.

■ In addition to standing, a plaintiff must have the capacity to pursue a claim. For example, minors and incompetents are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities; such persons are required to appear in court through a legal guardian, a "next friend," or a guardian ad litem. *See Sax v. Votteler*, 648 S.W.2d 661, 666–67 (Tex. 1983); *Peek v. DeBerry*, 819 S.W.2d 217, 218 (Tex.App.-San Antonio 1991, writ denied); *see also* TEX. PROBATE CODE §§ 601(14), 773; TEX.R. CIV. P. 44, 173.

Similarly, a decedent's estate "is not a legal entity and may not properly sue or be sued as such." *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex.1975); *see also Henson v. Crow*, 734 S.W.2d 648, 649 (Tex.1987). Although a minor, incompetent, or estate may have suffered an injury and thus have a justiciable interest in the controversy, these parties lack the legal authority to sue; the law therefore grants another party the capacity to sue on their behalf. Unlike standing, however, which may be raised at any time, a challenge to a party's capacity must be raised by a verified pleading in the trial court. TEX.R. CIV. P. 93(1)-(2); *Sixth RMA Partners v. Sibley*, 111 S.W.3d 46, 56 (Tex. 2003).

**B**

**Survival Claims—Standing**

■ At common law, a person's claims for personal injuries did not survive her death. *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 344 (Tex.1992); *see also Landers v. B.F. Goodrich Co.*, 369 S.W.2d 33, 35 (Tex.1963). In 1895, the Legislature abrogated this rule by enacting the survival statute, which now provides: "A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." *See* Act of May 4, 1895, ch. 89, 1895 Tex. Gen. Laws 143 (now codified at TEX. CIV. PRAC. & REM.CODE § 71.021(b)); *Russell*, 841 S.W.2d at 344. We have described a survival claim as one that belongs to the decedent:

> [Under the Texas Survival Statute], a decedent's action survives his death and may be prosecuted in his behalf. The survival action, as it is sometimes called, is wholly derivative of the decedent's rights. The actionable wrong is that which the decedent suffered before his death. The damages recoverable are

those which he himself sustained while he was alive and not any damages claimed independently by the survival action plaintiffs (except that funeral expenses may also be recovered if they were not awarded in a wrongful death action). Any recovery obtained flows to those who would have received it had he obtained it immediately prior to his death—that is, his heirs, legal representatives and estate.

*Russell,* 841 S.W.2d at 345 (citations omitted); *see also* TEX. CIV. PRAC. & REM.CODE § 71.021(b). The parties to a survival action seek adjudication of *the decedent's own* claims for the alleged injuries inflicted upon her by the defendant. Had the decedent lived, she would have had standing to seek redress in the courts for those injuries; due to her death, a representative must pursue the claim on her behalf. Here, that representative, Wilson's daughter, was ultimately granted the power to sue on the estate's behalf. A change in the status of the party authorized to assert the decedent's personal injury claim, however, does not change the fact that the decedent has been personally aggrieved and would not, therefore, eliminate the decedent's justiciable interest in the controversy. Because a decedent's survival claim becomes part of her estate at death,[2] it follows that the estate retains a justiciable interest in the survival action.

▆▆▆▆ We therefore hold that, in a survival action, the decedent's estate has a justiciable interest in the controversy sufficient to confer standing. *See Landers,* 369 S.W.2d at 35 (noting that a survival action seeks recovery for "damages sustained *by the decedent and his estate* as a result of the [wrongful] injuries.") (emphasis added); *see also Glickstein v. Sun Bank Mia-*

*mi, N.A.,* 922 F.2d 666, 670 (11th Cir.1991) (holding that the decedent's estate had standing because "[t]he traditional requirement that the plaintiff show an injury in fact that is fairly traceable to the conduct of the defendant is met by the allegation in the complaint that the defendants' actions resulted in the diminishment of the assets of the estate") (footnote omitted). When a decedent has been personally aggrieved by a defendant's conduct, the survival action advances a "real controversy" between the estate and the defendant that "will be actually determined by the judicial declaration sought." *See Nootsie,* 925 S.W.2d at 662. Therefore, because the pleadings in this case alleged that the defendants' negligent conduct injured Wilson, her estate had standing to pursue a claim.

We next consider whether Lovato had the capacity to bring the survival claim on the estate's behalf.

## C

### Survival Claims—Capacity

Certain individuals are afforded the capacity to bring a claim on an estate's behalf. In general, only the estate's personal representative has the capacity to bring a survival claim. *Frazier v. Wynn,* 472 S.W.2d 750, 752 (Tex.1971) ("[T]he personal representative . . . is ordinarily the only person entitled to sue for the recovery of property belonging to the estate."); *see also Shepherd v. Ledford,* 962 S.W.2d 28, 31 (Tex.1998). We have acknowledged, however, that under certain circumstances heirs may be entitled to sue on behalf of the decedent's estate. *Shepherd,* 962 S.W.2d at 31–32. For example, in *Shepherd,* we held that "[h]eirs at law can maintain a survival suit during the four-

---

**2.** The Texas Probate Code defines "estate" as "the real and personal property of a decedent." TEX. PROBATE CODE § 3(*l*). Personal property "includes interests in goods, money, choses in action, evidence of debts, and chattels real." *Id.* § 3(z).

year period the law allows for instituting administration proceedings if they allege and prove that there is no administration pending and none [is] necessary."[3] *Id.* We also acknowledged that a family agreement regarding the disposition of the estate's assets can provide support for the assertion that no administration of the decedent's estate is necessary. *Id.* at 32–34.

The parties dispute whether, under this Court's holding in *Shepherd,* Lovato was qualified to bring suit *as an heir* at the time she filed the survival action. *See Stewart v. Hardie,* 978 S.W.2d 203, 206–07 (Tex.App.-Fort Worth 1998, pet. denied); *Ford Motor Co. v. Cammack,* 999 S.W.2d 1, 4 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). We need not decide whether Lovato proved heirship, however, because

we hold that, in any event, Lovato acquired the capacity to sue *as the estate's personal representative* when she was appointed administrator on May 9, 2002. We must, therefore, consider whether Lovato's claims are barred because she did not cure the defect in her representative capacity until after limitations had expired.

## D

### Defects in Capacity

■ The survival action in this case is a health care liability claim governed by the two-year statute of limitations in the Medical Liability and Insurance Improvement Act (the "MLIIA"). *See* Act of May 30, 1977, 65th Leg., R.S., ch. 817, §§ 1.01–12.01, 1977 Tex. Gen. Laws 2039–2053 (for-

---

**3.** We recognize that, in *Shepherd,* we stated that "circumstances can exist when an heir may have *standing* to bring suit on behalf of the decedent's estate." 962 S.W.2d at 31 (emphasis added). Although we used the term "standing," we were actually describing a situation in which a decedent's heirs had the capacity, or legal right, to bring a survival action on behalf of the decedent's estate. *Id.* at 31–32; *see also Firestone v. Galbreath,* 976 F.2d 279, 283 (6th Cir.1992) ("According to the complaint, the Estate could trace a direct injury to the alleged acts of the defendants. The question is whether these plaintiffs can sue on behalf of the Estate. This would seem to be a question of capacity rather than standing ...."). We acknowledge that many of our courts of appeals (including the court of appeals in this case) have held that the question of who is entitled to sue on an estate's behalf under the survival statute is an issue of standing, and in so holding, many have relied on *Shepherd. See* 113 S.W.3d 45("Whether a person has a right to bring a survival action on behalf of an estate is a question of standing."); *Lorentz v. Dunn,* 112 S.W.3d 176, 178 (Tex.App.-Fort Worth 2003, pet. granted) ("Appellant argues that the issue should have been characterized as one of capacity instead of standing.... We hold that the issue in this appeal is one of standing and not capacity."); *Stewart v. Hardie,* 978 S.W.2d 203, 207 (Tex. App.-Fort Worth 1998, pet. denied) (treating

the issue as one of standing rather than capacity); *Ford Motor Co. v. Cammack,* 999 S.W.2d 1, 5 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) ("only heirs or personal representatives have a justiciable interest in recovering estate property"); *see also Pratho v. Zapata,* 157 S.W.3d 832, 839–42 (Tex.App.-Fort Worth 2005, no pet. h.); *Moore v. Johnson,* 143 S.W.3d 339, 341–44 (Tex.App.-Dallas 2004, no pet.); *County of Dallas v. Sempe,* 151 S.W.3d 291, 295–98 (Tex.App.-Dallas 2004, pet. filed); *Mayhew v. Dealey,* 143 S.W.3d 356, 370–71 (Tex.App.-Dallas 2004, pet. denied); *Coffey v. Johnson,* 142 S.W.3d 414, 418 (Tex.App.-Eastland 2004, pet. denied); *Stempson v. City of Houston,* No. 01–02–00280–CV, 2003 WL 139603, at *2–3 (Tex.App.-Houston [1st Dist.] Jan. 9, 2003, no pet.) (mem.op.); *Jasso v. Long,* No. 04–01–00069–CV, 2001 WL 1503240, at *1–2 (Tex.App.-San Antonio Nov.28, 2001, no pet.) (not designated for publication); *Littleton v. Prange,* 9 S.W.3d 223 (Tex.App.-San Antonio 1999, pet. denied); *Pittsburgh Corning Corp. v. Walters,* 1 S.W.3d 759, 766–68 (Tex.App.-Corpus Christi 1999, pet. denied); *Villegas v. Griffin Indus.,* 975 S.W.2d 745, 749–50 (Tex.App.-Corpus Christi 1998, pet. denied); *Garcia v. Caremark, Inc.,* 921 S.W.2d 417, 421 (Tex.App.-Corpus Christi 1996, no writ). However, for the reasons outlined above, the issue is more appropriately characterized as one of capacity.

mer Tex.Rev.Civ. Stat. art. 4590i), *repealed by* Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.[4] The parties agree that limitations expired on November 1, 2000[5] and that Lovato filed her original petition before that date. Her fourth amended and first supplemental petitions, however, were filed after limitations ran. The parties dispute whether these amended petitions should relate back to Lovato's original petition.

Generally, cases involving post-limitations representative capacity involve an amended pleading alleging that capacity for the *first time. See, e.g., Davis v. Preston,* 118 Tex. 303, 16 S.W.2d 117, 118 (1929); *Pope v. Kansas City, M. & O. Ry. Co. of Tex.,* 109 Tex. 311, 207 S.W. 514, 516 (1918); *see also Flores v. Cameron Co., Tex.,* 92 F.3d 258, 271–72 (5th Cir.1996). In such cases, the issue is usually whether the plaintiff's post-limitations amendment, altering the plaintiff's capacity, can relate back to the plaintiff's pre-limitations pleadings. This case is somewhat unusual, however, because Lovato has alleged representative status on behalf of the estate in every petition filed with the trial court. Her original petition asserted that she was the "Personal Representative of the Estate of Margarita Torres Wilson." This allegation, though apparently untrue, asserted that Lovato was bringing suit in her capacity as the estate's representative. Thus, the issue here is not whether her amended pleadings relate back to her original petition—as every petition alleges her repre-

sentative status—but whether her post-limitations capacity cures her pre-limitations lack thereof. We conclude that it does.

We have previously recognized that the substitution of a personal representative for dependents does not introduce a new or different cause of action and that such a substitution will relate back to the time of the original filing of the lawsuit. *Pope,* 207 S.W. at 516. Similarly, when a widow filed suit in her individual capacity and later amended her pleadings to assert her capacity as administratrix, we held "[t]hat this defect did not prevent her suit from being 'properly commenced,'" prior to expiration of the statute of limitations. *Davis,* 16 S.W.2d at 118. We noted that:

> The defect in her petition was that she sued as an individual, instead of as administratrix. She was the real party at interest, no matter by whom the suit was prosecuted.
>
> . . . .
>
> This action was commenced before it was barred under the terms of any statute of limitations by the filing of the original petition and the service of citation on the Director General.

*Id.; see also Mo., Kans. & Tex. Ry. Co. v. Wulf,* 226 U.S. 570, 575–78, 33 S.Ct. 135, 57 L.Ed. 355 (1913) (holding that an amendment by a plaintiff to allege a claim in her representative capacity as adminis-

---

4. While this case was pending, the Legislature enacted House Bill 4 ("H.B.4") which repealed article 4590i and governs all health care liability claims filed on or after September 1, 2003. Act of June 2, 2003, 78th Leg., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 884 (now codified at Tex. Civ. Prac. & Rem.Code §§ 74.001–.507). Because former article 4590i continues to govern this case we will cite to the article.

5. Because pre-suit notice was given to Austin Nursing Center, the MLIIA's ordinary two-year statute of limitations was tolled for an additional seventy-five days, making November 1, 2000 the last possible date suit could be filed. *See* Tex.Rev.Civ. Stat. art, 4590i, § 4.01(c).

trator of estate under federal law, related back to claims brought in her individual capacity under state law; such an amendment was not equivalent to the commencement of a new cause of action so as to subject the amendment to the statute of limitations); *Flores,* 92 F.3d at 272–73 (5th Cir.1996) (applying federal relation-back rule to Texas survival claim to conclude that mother's amended complaint alleging that she was the administrator of her son's estate related back to her original complaint filed on behalf of her son but failing to allege her representative capacity). Although we decided *Davis* and *Pope* before the relation-back statute was enacted,[6] we do not believe the statute compels a different result. Moreover, when faced with a change in a *defendant's* capacity—an amended petition filed against an estate's representative, when the original petition named only the estate itself—we held that limitations did not bar the claim, because "the purpose and the nature of the claim asserted were clear from the outset." *Price v. Estate of Anderson,* 522 S.W.2d 690, 692 (Tex.1975); *see also Rooke v. Jenson,* 838 S.W.2d 229, 230 (Tex.1992).

If, as we have held, a plaintiff's amended pleading alleging representative capacity satisfies the relation-back requirements, an original petition that alleges the correct capacity should suffice for limitations purposes, provided that capacity, if challenged, is established within a reasonable time.[7] The trial court, by granting summary judgment, necessarily concluded that, despite her pleading to the contrary, Lovato was not the estate's personal representative at the time she filed the original petition. While we presume that Lovato and her attorney filed that petition in good faith, we cannot ascertain from this record the basis for their pleading that Lovato was, in fact, "Personal Representative" of Wilson's estate when "no administrator has been appointed." The parties, or the trial court, are in a better position to determine whether the pleading was filed after reasonable inquiry. *See* TEX.R. CIV. P. 13; *see also* TEX. CIV. PRAC. & REM.CODE ch. 10.

In any event, it would be pointless to require that the plaintiff file an "amended" pleading containing the same allegations of capacity as were stated in her original petition. The estate commenced the suit before limitations expired; Lovato cured the defect in her capacity before the case was dismissed. Under those circumstances, the estate had standing and was ultimately represented by a person with capacity to pursue the claim on its behalf.

Having determined that Lovato remedied her defective capacity and that her original petition was timely, we need not reach Austin Nursing Center's remaining argument—that the MLIIA's mandatory two-year limitation period "notwithstanding any other law" precludes Lovato's post-limitations amendment from relating back to her original petition. Because Lovato's original petition asserting her representative capacity was filed before the statute of limitations expired, the survival claim is not time-barred.

6. *See* Act approved May 13, 1931, 42nd Leg., R.S., ch. 115, § 1, 1942 Tex. Gen. Laws 194 (now codified at TEX. CIV. PRAC. & REM.CODE § 16.068).

7. The burden is on the defendant to challenge capacity via verified plea, and the trial court should abate the case and give the plaintiff a reasonable time to cure any defect. *See* TEX.R. CIV. P. 93(1)-(2); *Coakley v. Reising,* 436 S.W.2d 315, 317 (Tex.1968); *Shiffers v. Estate of Ward,* 762 S.W.2d 753, 755 (Tex. App.-Fort Worth 1988, writ denied).

## IV

### Conclusion

We affirm the court of appeals' judgment. *See* Tex.R.App. P. 60.2(a).

Justice JOHNSON did not participate in the decision.