Opinion issued March 29, 2007




 

 



 








In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-00356-CV

____________


INTRACARE HOSPITAL NORTH AND TERRY BAUSKE, Appellants


V.


CINDY CAMPBELL, AS NEXT FRIEND AND GUARDIAN OF FRANK
BROWN, Appellee






On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2005-71529






DISSENTING OPINION

 I respectfully dissent. I would affirm the trial court's denial of appellants' 
motion to dismiss appellees' health-care-liability claim for failure to timely file an
expert report. I agree with the trial court that the 120-day expert report deadline was
tolled until Campbell was appointed Brown's guardian. 

 On November 4, 2005, Campbell filed her original petition, alleging that she
sued appellants "individually and as next friend of . . . Brown, "a nineteen-year old
suffering from paranoid schizophrenia." On November 30, 2005, appellants filed
special exceptions alleging that Campbell had not been appointed Brown's legal
guardian and, therefore, lacked the capacity to sue on his behalf. The next day,
December 1, 2005, appellants filed an unverified "Motion to Determine the Legal
Capacity of Cindy Campbell," requesting that the trial court order Campbell "to
produce evidence of her legal capacity to bring this suit . . ." within 10 days or,
alternatively, that Campbell's next-friend claims "be dismissed for want of legal
capacity to sue." The trial court did not immediately rule on appellants' motion or
special exceptions. While appellants' motion and special exceptions were pending,
Campbell sought appointment as Brown's legal guardian.

 Campbell filed her first amended petition on January 13, 2006, alleging that
she brought suit individually and as next friend of Brown, "an incapacitated person,"
under Texas Rule of Civil Procedure 44. See Tex. R. Civ. P. 44 ("Minors, lunatics,
idiots, or persons non compos mentis who have no legal guardian may sue and be
represented by 'next friend' under the following rules . . . ."). She also alleged that
her son was a "mentally incapacitated adult." Campbell realleged the same matters
relating to Brown's claims in her second amended petition, which she filed on
February 15, 2006. Campbell had not cured her lack of capacity to sue on Brown's
behalf when she filed these petitions.

 On March 2, 2006, the Madison County Court appointed Campbell as
Brown's legal guardian. On March 6, 2006, appellants moved to dismiss Brown's
and Campbell's claims against them for Campbell's failure to serve an expert report
on them within 120 days of the claim's filing. On March 20, 2006, Campbell moved
the trial court to have the guardianship recognized. She also simultaneously filed a
third amended petition, alleging that her claims were asserted individually and on
behalf of Brown--both as his guardian and as his next friend. On April 4, 2006, the
trial court signed an agreed order recognizing Campbell's guardianship of Brown.

 As the majority states, "[M]inors and incompetents are considered to be
under a legal disability and are therefore unable to sue or be sued in their individual
capacities; such persons are required to appear in court through a legal guardian, a
'next friend,' or a guardian ad litem." See Austin Nursing Ctr., Inc. v. Lovato, 171
S.W.3d 845, 849 (Tex. 2005). "'[A] party has capacity when it has the legal authority
to act, regardless of whether it has a justiciable interest in the controversy.'" Coastal
Liquids Transp., L.P. v. Harris County Appraisal Dist., 46 S.W.3d 880, 884 (Tex.
2001) (quoting Nootsie, Ltd. v. Williamson Cty. Appraisal Dist., 925 S.W.2d 659, 661
(Tex. 1996)) (emphasis added). 

 Here, Campbell lacked legal capacity to sue as her adult son's next friend
when she filed her first and second amended petitions. That defect was cured by
Campbell's appointment as Brown's legal guardian. Cf. Lorentz v. Dunn, 171 S.W.3d
854, 856 (Tex. 2005) (when person is appointed administrator of estate she acquires
capacity to assert survival claim on estate's behalf); Lovato, 171 S.W.3d at 851
(Lovato acquired capacity to sue when she was appointed administrator of estate). 

 Under Lovato and Lorentz, Campbell's appointment relates back to the
filing of Brown's claims to prevent limitations from running on the claims while no
one was in a position of authority to act on his behalf. See Lovato, 171 S.W.3d at
851, 853 ("The estate commenced the suit before limitations expired; [Plaintiff]
Lovato cured the defect in her capacity before the case was dismissed. Under those
circumstances, the estate . . . was ultimately represented by a person with capacity to
pursue the claim on its behalf."); accord Lorentz, 171 S.W.3d at 856 (following
Lovato).

 It does not follow from Lovato and Lorentz, however, that the deadline for
filing an expert report includes the time it takes to cure a lack of capacity to sue that
a defendant has brought to the attention of the trial court. If that were so, all essential
deadlines could run while no one had the actual capacity to act on them--just as
appellants allege and the majority agrees happened here. This would reintroduce the
identical problem Lorentz and Lovato cured: the problem of deadlines running on
claims no one is in a position to make. See Lovato, 171 S.W.3d at 851 ("We must .
. . consider whether Lovato's claims are barred because she did not cure the defect in
her representative capacity until after limitations had expired."); Lorentz, 171 S.W.3d
at 856 ("Lorentz's late-acquired capacity cured her pre-limitations lack thereof, and
the trial court therefore erred in dismissing the case."). 

 Lovato and Lorentz hold that lack of capacity can be cured even after
deadlines have run. See Lovato, 171 S.W.3d at 852-53; Lorentz, 171 S.W.3d at 856.
They do not hold that because the plaintiff's capacity to sue relates back to the date
of filing of a claim and cures the failure to meet that deadline it also relates back to
all interim dates and creates opportunities for dismissal for failure to meet all the
other deadlines that elapsed while the plaintiff was in the process of curing her lack
of capacity at a defendant's insistence. Rather, as the supreme court stated in Lovato,
in a case brought by a claimant who lacks capacity to sue, "[t]he burden is on the
defendant to challenge capacity via verified plea, and the trial court should abate the
case and give the plaintiff a reasonable time to cure any defect." Lovato, 171 S.W.3d
at 853, n.7 (emphasis added); see also Tex. R. Civ. P. 93(1)-(2); Coakley v. Reising,
436 S.W.2d 315, 317 (Tex. 1968); Shiffers v. Estate of Ward, 762 S.W.2d 753, 755
(Tex. App.--Fort Worth 1988, writ denied). 

 The trial court did just as Lovato directs. It carried appellants' motion to
dismiss with the case until Campbell had been given a reasonable opportunity to cure
the defect in capacity raised by defendants and then denied the motion to dismiss. 
It thus implicitly tolled the running of deadlines on Brown's claims during that time.
Rather than holding Campbell to deadlines that all parties acknowledge she lacked
the capacity to meet at the time they elapsed, I would hold that those deadlines were
tolled by the trial court's decision to withhold its ruling on appellants' motion to
dismiss for the reasonable time it took Campbell to cure her lack of capacity. 

 Even though the majority recognizes that the trial court's order denying
appellants' motion to dismiss effectively tolled those deadlines that ran during the
time appellant was attempting to cure her lack of capacity to sue, the majority
nevertheless requires an express ruling by the trial court in the record in response to
a defendant's special exceptions and/or motion to dismiss for lack of capacity, in
advance of its final ruling, expressly ordering the plaintiff to cure her lack of
capacity, abating the case, and tolling all other deadlines while the lack of capacity
is cured. And the majority refuses to recognize the implicit tolling effect of a trial
court's carrying a motion to dismiss for lack of capacity until the lack of capacity is
cured. 

 I can find nothing in the Texas Rules of Civil Procedure or Texas case law
to support the strict bifurcated procedure required by the majority to toll the running
of deadlines while a defect in capacity raised by a defendant is cured. Rather, in my
view, the majority's reading of the Texas Rules of Civil Procedure serves neither the
letter nor the spirit of the law. It prohibits the trial court from implicitly tolling
deadlines while a defect in capacity to sue is addressed by delaying its ruling on a
motion to dismiss raising the defect in capacity to allow a reasonable time for the
plaintiff to cure the defect. Effectively, the majority's opinion undoes Lovato and
Lorenz and places in the hands of defendants the arbitrary power to enforce deadlines
running against a plaintiff that all parties and the court acknowledge she lacks the
capacity to meet. 

 Because the majority's opinion encourages the resolution of legal suits on
a strict reading of rules of procedure subject to arbitrary and capricious enforcement
at the expense of "a just, fair, equitable and impartial adjudication of the rights of
litigants under established principles of substantive law," I respectfully dissent. Tex.
R. Civ. P. 1. I would hold that, under Lovato and Lorenz, deadlines running on a
claim brought by a party whose capacity to sue is challenged are implicitly tolled by
the trial court's decision to delay ruling on a motion to dismiss pending a reasonable
attempt by the plaintiff to cure the defect, and they begin to run from the date the
defect is cured. See Lorenz, 171 S.W.3d at 856; Lovato, 171 S.W.3d at 851.

 I would affirm the trial court's order denying the dismissal of Brown's
claims.








 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.


Justice Keyes, dissenting.