

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00093-CV

LILLIAN SMITH, Appellant

V.

SWEDE HILL LOFTS HOMEOWNERS ASSOCIATION, INC., Appellee

On Appeal from the 353rd District Court
Travis County, Texas
Trial Court No. D-1-GN-12-001420

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

After Landon Hutchins moved into the condominium of his mother, Lillian Smith, in the Swede Hill Lofts Condominiums (Swede Hill) in Austin,[1] the neighbors began to complain about Hutchins' use of the premises, loud noises and noxious odors coming from his unit, and one or more instances of law enforcement intervention at the unit. When the imposition of fines against Smith for violations of the rules and regulations of the Swede Hill Homeowners' Association (HOA) did not achieve favorable results, the HOA sued Smith and recovered a money judgment and injunctive relief against her. On appeal, Smith claims that the HOA did not properly authorize the fines or the filing of the lawsuit against her. We affirm the judgment of the trial court, because (1) sufficient evidence supports the trial court's finding that the HOA-assessed fines against Smith were properly authorized and (2) Smith's claim that the HOA Board of Directors did not properly authorize the lawsuit against her is not supported by the evidence.

Smith owns unit 106[2] in Swede Hill. Hutchins moved into the unit and lived there sporadically during 2009. Sometime during 2010, Hutchins began living in unit 106 on a full-time basis. In 2009, the HOA, through its president, Robert Hageman,[3] began to receive complaints

[1]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]As a unit owner, Smith is a member of the HOA. Smith testified that, at some point, she deeded some interest in the unit to Hutchins, but that is not relevant to this appeal.

[3]Hageman testified that the condominiums were constructed in 2006 and 2007 by Radiant Solutions, Hageman's building company and general partner of Swede Hill Lofts Limited. Swede Hill Lofts Limited owns nine of the condominium units. It designated Hageman to represent it as a member of the HOA and to exercise its nine votes. Hageman became president of the HOA in 2007 and continued in that capacity through the time of trial.

about Hutchins' behavior. Those complaints continued through 2011. On March 8, 2011, Hageman e-mailed Smith a letter advising her that a warning letter regarding Hutchins' behavior was being mailed to her by certified mail. The e-mail attached a copy of the HOA rules and regulations and Swede Hill Declarations together with photographic documentation of certain infractions allegedly committed by Hutchins.

On that same date, the HOA sent formal notice, by certified mail, to Smith and Hutchins stating that further violations would result in a $500.00 fine for the first occurrence and a $1,000.00 fine for the second occurrence. In January 2012, Hageman sent Smith an e-mail indicating that the HOA would enforce the fines, if the infractions continued. Smith was ultimately fined $500.00 based on the March 2011 warning. Later in January, Hutchins initiated a confrontation with the owner of unit 104 and continued to park in other's parking spaces. As a result of these continued infractions, Smith was fined $1,000.00 per the board's ruling in March 2011.

In April 2012, Hageman sent an e-mail to the HOA membership to call a meeting to discuss "[w]hat action should be taken against Mr. Landon Hutchins, tenant of Owner Lillian Smith, Unit 106."[4] Hageman advised the members that "Mr. Bill Davidson, the attorney who drafted all the condo documents[,] . . . proposed to file for a temporary restraining order then permanent restraining order against Mr. Hutchins/Ms. Smith in county court to limit the adverse actions to

---

[4]The e-mail mentioned continuing problems with Hutchins, who reportedly caused the couple who occupied the unit next door to move out after they sent Hageman more than eight e-mails with complaints concerning unit 106. The e-mail further indicated that Hageman had also received comments from three other tenant/owners who reported aggressive behavior by Hutchins and a telephone call to police for a disturbance on April 6 in unit 106.

the rules of the Association." The e-mail meeting of members was a common practice because many unit owners were out of town.

Following an online discussion in which Smith participated, Rob Lane moved "that any and all remedies available to [the] Association, be taken against [Hutchins]" in light of his "repeated violation of Swede Hill rules and regulations, as well as his inability to adapt to the norms of communal housing." The motion was seconded by Hageman and Carol Haynes, and the HOA members were provided with ballots to vote for or against "the motion to file a restraining order for conduct adverse to the rules, regs and declaration of the HOA against the owner and resident of Unit 106." The HOA voted to seek a temporary injunction against Hutchins and Smith to restrain further conduct averse to the HOA rules.[5] The HOA's original petition was filed May 9, 2012.[6]

In January 2013, Hageman sent a notice for an HOA meeting regarding damages to the building allegedly caused by Hutchins. The intent was to ask the attorney who filed the lawsuit relating to the temporary restraining order to likewise request the recovery of damages against Hutchins.[7] Other agenda items included voting on an additional fine against Smith and assessing

---

[5]The Condominium Declaration states, "If an Owner owns more than one Unit, the Owner has one vote for each Unit owned. If a Unit is owned by more than one person or entity, the owners of that Unit must designate a representative to vote for the owners." The Condominium contains eighteen units, and Hageman was authorized to vote for nine units. Voting in favor of the motion were Joe Stoutt, Rob Lane, Kelvin Glover, Haynes, and Hageman (voting for units 101, 102, 103, 105, 203, 205, 301, 302, and 303). There were no votes cast against the motion. Members who did not vote were Brad Tegeler, Eddie Ruan, Emilio Zamora, Imon, and Smith.

[6]Hutchins moved out of the condominium in 2012.

[7]The HOA bylaws state, "The Board will manage corporate affairs." In actual practice, though, the HOA members voted on matters and would then instruct the board of directors to "make that occur."

4

against Smith the cost associated with obtaining a temporary restraining order. The meeting was held at the Doubletree Hotel on January 30, 2013,[8] at which time each of the agenda items was voted on and passed. Following the meeting, Hageman sent Smith an invoice for $8,925.00, representing the cost of the agenda items passed at the meeting. A claim for property damage was ultimately included in the HOA's lawsuit.

Following a bench trial, the trial court entered judgment against Smith for $1,500.00 for unpaid fines assessed against her by the HOA, $5,000.00 for damage to HOA property by Hutchins, Smith's tenant, and attorney fees in the amount of $44,268.98.[9]

---

[8]Attending the Doubletree meeting were Kelvin Glover (unit 304), William Haynes (unit 304), Josh Dawkins (unit 104), and Hageman (voting for units 101, 102, 103, 105, 203, 205, 301, 302, and 303).

[9]The trial court also entered a permanent injunction against Smith enjoining her from directly or indirectly allowing her tenants to violate HOA rules. The trial court entered findings of fact and conclusions of law. Key among the trial court's findings are:

25.  The Association timely and in accord with the Declaration assessed a fine of $500.00 against Lillian Smith.

26.  Lillian Smith was notified timely that the fine had been assessed in the amount of $500.00. Lillian Smith received the notice sent to her by the Association.

. . . .

28.  The Association timely and in accord with the Declaration assessed a second fine against Lillian Smith in the amount of $1,000.00.

29.  Lillian Smith was notified timely in the manner set out in the governing documents of the Association that the second fine had been assessed. Lillian Smith received notice of the second fine having been assessed.

. . . .

31.  As provided in the Declaration and in accord with the provisions of the Declaration the Association assessed a charge against Lillian Smith for damages caused by Landon Hutchins to the Common Elements of the Condominium and property that Landon Hutchins damaged.

5

*(1)    Sufficient Evidence Supports the Trial Court's Finding that the HOA-Assessed Fines Against Smith Were Properly Authorized*

Smith complains that the board failed to approve fines against her at a meeting in which board members could simultaneously hear one another before reaching a determination that it would impose fines.  *See* TEX. PROP. CODE ANN. § 82.108(c)(1)(A), (B).  As a sub-issue, Smith complains that she was not provided the opportunity to challenge the veracity of the alleged violations before fines were imposed.  Smith therefore claims that the fines were assessed improperly and that the trial court erred in making them part of the judgment.  We interpret this argument as an attack on the legal and factual sufficiency of the evidence to support the judgment's inclusion of $1,500.00 in HOA-assessed fines.

"In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable juror could, and disregarding contrary evidence unless a reasonable juror could not." *Lugo v. Herrera*, No. 03-08-00215-CV, 2008 WL 4823163, at *2 (Tex. App.—Austin Nov. 7, 2008, no pet.) (mem. op.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)).  The "test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).  "In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance

---

At the time of trial, Hutchins had vacated the premises, and the HOA had nonsuited its claims against him.

6

of the evidence as to be clearly wrong and manifestly unjust." *Lugo*, 2008 WL 4823163, at *2 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

After Hutchins moved into unit 106, his behavior became increasingly disruptive of the Swede Hill community. Both Smith and Hutchins were confronted about Hutchins' numerous infractions, including loud music, noxious odors, loud talking, loud disturbances with guests, parking in other people's spots, parking in unmarked areas, police activity at the unit, trash on the walkway by the door, guests who arrived at all hours of the night, and a guest who stole property from another resident.

In March 2011, Smith received a warning from the HOA by e-mail and certified mail regarding listed grievances and was informed, "The Board voted to establish a fine if, after 30 days from this notice, any of these grievances occur again. The First occurrence fine is $500—the second occurrence fine is $1000." The notice referenced Section 3.05 of the Declaration, which provides that "the Owner may request a written hearing before the Board within thirty (30) days of the notice." Smith testified that she received the e-mail notice and that, if the notice was sent to her by certified mail, her secretary would have given it to her. Smith did not request a hearing before the board to contest the fines.

Hageman testified that the board conducted a telephone meeting before the letter was mailed. He explained that the fines were not initially imposed because Hutchins indicated that he intended to move. By January 2012, neither had Hutchins moved nor had the infractions ceased. To address the continued infractions, the board conducted a meeting by telephone conference to determine if the board wanted to "go ahead and actually demand payment for the fines." Each of

7

the board members was on the telephone conference at the same time. The board consisted of Hageman, Glover, and Vipul Patel. All voted to demand payment for the $500.00 fine, although Glover did not vote to demand payment for the $1,000.00 fine.[10]

As previously discussed, a board meeting may be held telephonically, if "each director may hear and be heard by every other director." TEX. PROP. CODE ANN. § 82.108(c)(1)(B). Telephonic board meetings were also authorized by Section 12.01 of the HOA bylaws ("[A]ll persons participating in the meeting [must] hear each other."). During the board's meeting by conference call, each of the members was on the call at the same time. This satisfies the requirements of Section 182.108(c)(1)(B), as well as the similar requirement of Section 12.01 of the bylaws. We find that this evidence is both legally and factually sufficient to support the inclusion of HOA-assessed fines in the amount of $1,500.00 in the judgment.

*(2)* *Smith's Claim that the HOA Board of Directors Did Not Properly Authorize the Lawsuit Against her Has No Foundation in the Evidence*

Smith also claims that the HOA's decision to initiate litigation was invalid because it failed to comply with Sections 82.106 and 82.108 of the Texas Property Code. More specifically, she claims that the decision was invalid because it was not made at a board meeting "whereby the Board Members could simultaneously hear one another before reaching its conclusion." Instead, Smith claims the decision to initiate litigation was made via e-mail communications among the board members over a period of several days.[11] Consequently, Smith claims that "the decision

---

[10]The members had already voted to assess the fines.

[11]Although Smith's point of error also complains that the board of directors' decision to initiate litigation was not made in compliance with its own governing documents, Smith has failed to brief that portion of this issue. As a result, that aspect of this issue is forfeited. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain clear and concise

was therefore, invalid and void," and that the litigation was not authorized.[12] Smith's main problem with this point of error is that the evidence adduced at trial established that the lawsuit was ostensibly authorized at a membership meeting of the HOA, not a meeting of the board of directors. We find no evidence suggesting that the board of directors did or did not authorize the lawsuit.

In her counter petition, Smith sought a declaratory judgment claiming, among other things, that the HOA "failed to comply with the HOA Declarations, and/or the HOA Bylaws, Rules and Regulations, by . . . bringing this action without authority, a properly noticed meeting, and/or a proper vote from the Board of Directors and/or the membership." Smith requested findings of fact and conclusions of law, and those were filed by the trial court. The trial court did not make a

---

argument for contentions made, with appropriate citations to authorities and to record); *Gen. Serv. Comm'n v. Little-Tex. Insulation Co.*, 39 S.W.3d 591, 598 n.1 (Tex. 2001) (appellant's failure to brief an issue on appeal waives that issue); *Prof'l Res. Plus v. Univ. of Tex., Austin*, No. 03-10-00524-CV, 2011 WL 749352, at *1 (Tex. App.—Austin Mar. 4, 2011, no pet.) (mem. op.).

[12]Smith asserts various other complaints in conjunction with this point of error, including (1) the board's action in initiating litigation was not ratified by the HOA, (2) because the damages sought vary with each member, the HOA was not authorized to sue on behalf of its members, and (3) Hageman never had the appropriate signed proxy indicating he was allowed to serve as the individual representative of Swede Hill Lofts Limited. Because Smith failed to brief these issues, they present nothing for our review. TEX. R. APP. P. 38.1(i); *Gen. Serv. Comm'n*, 39 S.W.3d at 598 n.1.

Swede Hill would have us construe this point of error as one attacking the HOA's capacity to file suit against Smith, claiming that it has been waived by the failure to file a verified denial. *See* TEX. R. CIV. P. 93. We decline to interpret Smith's argument as a claim of a lack of capacity. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) ("Although a minor, incompetent, or estate may have suffered an injury and thus have a justiciable interest in the controversy, these parties lack the legal authority to sue; the law therefore grants another party the capacity to sue on their behalf."); *Sax v. Votteler*, 648 S.W.2d 661, 666–67 (Tex. 1983) (minor is under legal disability and thus is unable to sue or be sued in individual capacity); *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975) (decedent's estate is not legal entity and may not sue or be sued as such). The procedure whereby the HOA board of directors authorized the initiation of a lawsuit against Smith did not affect their legal capacity to bring the lawsuit.

specific finding on the issue of the HOA's authority to file suit against Smith. Instead, the trial court's finding on Smith's counterclaim states:

> 36. The court finds that Lillian Smith, as Counter-Plaintiff, failed to produce evidence to support the elements of the causes of action plead [sic] as a counter-claim in her Fourth Amended Answer and Counterclaim.

This finding may be interpreted to mean that the HOA had authorized filing suit or that Smith simply did not present sufficient evidence that the HOA had failed to do so. Regardless of how this finding is construed, we find Smith's point of error is without merit because it has no support in the evidence.

Smith argues—with only vague reference to Sections 82.106 and 82.108 of the Texas Property Code—that the HOA had not authorized filing suit because of the *manner* in which the board of directors supposedly took action to authorize the lawsuit. That is, she claims such a meeting should not have been conducted by e-mail amongst the board of directors and should have, instead, taken place in person.

Although Smith does not identify a specific subsection of the Texas Property Code provisions she claims were violated, in light of her complaint that "the determination to initiate litigation against Appellant was not done at a Board meeting whereby the Board Members could simultaneously hear one another before reaching its conclusion," we can conclude only that her complaint relates to Section 82.108(c)(1). Section 82.108(c)(1) provides, in part, that "a meeting of the board may be held by any method of communication, including electronic and telephonic, if . . . notice of the meeting has been given in accordance with Subsection (e) . . . [and] each director may hear and be heard by every other director." TEX. PROP. CODE ANN. § 82.108(c)(1)(A), (B).

10

Smith's complaint and scant legal authority on this issue do not address the evidence elicited at trial. That evidence showed only that the decision to initiate litigation was made by the members of the HOA, who were provided with ballots to vote regarding bringing litigation against "the owner and resident of Unit 106." Smith does not complain that the decision to initiate litigation was invalid because it was made by the HOA membership. Certainly, there is no argument or authority cited in her brief on this issue. She simply complains—in a rather cursory manner—that the board of directors invalidly decided in favor of the litigation by meeting via e-mail.

Smith's point of error challenging the authority to file the lawsuit fails because its entire premise is unsupported by the evidence. This point of error is overruled.[13]

---

[13]Smith also complains that the supposed decision of the board of directors to initiate litigation was invalid under Section 82.106 of the Texas Property Code. This section of the code provides:

(a)     The administration and operation of the condominium are governed by the bylaws, which must provide for:

(1)     the number of members on the board and the titles of the officers of the association;

(2)     election by the board of a president, treasurer, secretary, and any other officers the bylaws specify;

(3)     the qualifications, powers and duties, terms of office, and the manner of electing and removing a board member or officer and filling vacancies;

(4)     the powers, if any, that the board or an officer may delegate to other persons or to a managing agent;

(5)     the designation of officers who are authorized to prepare, execute, certify, and record amendments to the declaration on behalf of the association;

(6)     the method of amending the bylaws; and

(7)     the manner of notice of meetings of the association.

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    July 1, 2019
Date Decided:      July 17, 2019

---

(b)    Subject to the declaration, the bylaws may provide for other matters the association considers desirable, necessary, or appropriate.

TEX. PROP. CODE ANN. § 82.106.  Smith's briefing does not indicate, either directly or indirectly, which subsection of this provision she claims supports her argument.  We find that Smith has forfeited this argument on appeal.  *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and to record); *Gen. Serv. Comm'n v. Little-Tex. Insulation Co.*, 39 S.W.3d 591, 598 n.1 (Tex. 2001) (appellant's failure to brief an issue on appeal waives that issue); *Prof'l Res. Plus v. Univ. of Tex., Austin*, 2011 WL 749352, at *1.