

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JENNIFER CABALLERO, | § | No. 08-18-00033-CV |
| Appellant, | § | Appeal from the 388th |
| v. | § | Judicial District Court |
| SANJIV VIG, | § | of El Paso County, Texas |
| Appellee. | § | (TC#2014DCM6244) |

## **O P I N I O N**

This is an appeal from a final divorce decree. The issue before us, however, is not the substance of the decree, but instead whether the judge who decided it should have been recused. Specifically, Appellant Jennifer Caballero ("Wife") challenges the denial of her post-trial motion to recuse El Paso District Court Judge Laura Strathmann, who presided over her divorce from Appellee, Sanjiv Vig ("Husband"). In her recusal motion, Wife claimed that following trial, she obtained court documents which convinced her that Judge Strathmann and Patrick Bramblett, one of the attorneys who represented Husband at trial, were married at the time of trial. While Judge Strathmann and Bramblett had years earlier obtained an annulment decree, Appellant believed that the prior decree was "void." And because Judge Strathmann's marriage to Bramblett never terminated, Wife urged that the judge was therefore required to recuse herself from presiding over the trial. Because we find that Wife lacked standing to challenge the validity of the judge's

1

annulment decree, we affirm the denial of Wife's recusal motion, without considering the validity of the annulment decree itself.

## I. BACKGROUND

### A. The Parties' Divorce Proceedings

Wife initially filed a petition for divorce on September 2, 2014, seeking a divorce from Husband, a division of property, and determination of child custody and child support. Husband initially retained attorney David Hilles and filed a counterpetition for divorce. Prior to trial, the parties were involved in protracted discovery battles, as well as contempt proceedings, most of which involved alleged violations of the temporary orders pertaining to child custody and support issues. Wife believed that throughout these various pretrial proceedings, Judge Strathmann treated her fairly.

On March 24, 2017, approximately two and a half months prior to the parties' trial that began on June 5, 2017, attorney Patrick Bramblett entered his appearance as co-counsel for Husband. Wife admits that she knew prior to trial that Judge Strathmann and Bramblett had previously been married but asserts that she had been told by her own trial counsel and another local attorney that the couple's marriage had previously ended in a "contentious" divorce. Wife did not file a pretrial motion to recuse Judge Strathmann.

Wife, however, claims that she became concerned after Bramblett took the lead role in representing Husband at their trial. She believed that Judge Strathmann's attitude toward her changed during the trial. Wife became even more concerned after trial when she received unfavorable rulings on custody, child support arrearages, and attorney's fees. Because of her concern, Wife obtained the documents filed in the Judge Strathmann-Bramblett divorce proceedings. Those records showed that the couple had actually obtained an annulment and not a

2

divorce.

Nine days after the trial court issued its "Findings and Orders of Final Divorce" (but before a final divorce decree was signed), Wife filed a motion to recuse Judge Strathmann alleging that the judge and Bramblett were still married and that the judge was therefore required to recuse herself from the proceedings pursuant to Rule 18b of the Texas Rules of Civil Procedure. *See* TEX.R.CIV.P. 18b(b)(8) (a "judge must recuse in any proceeding in which . . . the judge or the judge's spouse . . . is acting as a lawyer in the proceeding.").

## B. Wife's Recusal Motion

In support of her motion, Wife attached the record from the district court's file in a case entitled, "In the Matter of the Marriage of Laura K. Strathmann and Patrick D. Bramblett." The record revealed that Judge Strathmann originally filed a petition for divorce on June 29, 2009, alleging that the parties were married on February 19, 2009, but had ceased living together on June 26, 2009. Bramblett thereafter filed a "Counter-Petition to Annul Marriage," alleging that Judge Strathmann had induced him to enter into the marriage as the result of fraud, and that he had not voluntarily cohabited with her since learning of the fraud. In his counter-petition, Bramblett objected to assigning the matter to an associate judge for a trial on the merits.[1] Shortly thereafter, however, Bramblett filed a "Notice of Nonsuit of Counter-Petition to Annul Marriage." Then, Judge Strathmann filed what she labeled as a "Counter Petition to Annul Marriage," in which she alleged:

> Petitioner and Respondent entered into the marriage by fraud, neither party fully
> understood the situational aspects surrounding the other party at the time, and

[1] Section 201.005 of the Texas Family Code provides that a judge of a court may refer any aspect of a suit to an associate judge, including a trial on the merits, unless a party files a written objection to allowing the associate judge to hear the trial. TEX.FAM.CODE ANN. § 201.005(a)(b). "If an objection is filed, the referring court shall hear the trial on the merits or preside at a jury trial." *Id.* § 201.005(c). However, in the absence of an objection, an associate judge not only has the authority to conduct the trial, but also has the authority to render a final order agreed to in writing as to both form and substance by all parties. *Id.* § 201.007(14)(A).

3

neither party fully disclosed such situational aspects so all relevant facts and circumstances were known by all before the marriage.

Judge Strathmann further alleged that the parties had not "voluntarily cohabitated since learning of the fraud." Following a hearing at which both parties appeared, an associate judge entered a Decree of Annulment, dated August 21, 2009, finding that the "material allegations" in the counter-petition for annulment were "substantially correct and had been proved by full and satisfactory evidence."

Neither Judge Strathmann, nor Bramblett ever challenged the validity of the annulment decree. Wife, however, argued in her recusal motion that the annulment decree was void for two reasons. First, she argued that Judge Strathmann, who filed the operative petition seeking the annulment, did not set forth a valid ground for an annulment in her pleadings. Second, Wife argued that the associate judge who signed the pleadings did not have the authority to do so because Bramblett initially objected to having an associate judge hear the case and never withdrew his objection. Wife therefore argued that the trial court lacked jurisdiction to enter the annulment decree, thereby rendering it void. And if void, Judge Strathmann and Bramblett were still married at the time of her trial and she should be recused.

Husband filed a response, arguing that the annulment decree was not void as Judge Strathmann's pleadings complied with all the procedural and statutory requirements for obtaining an annulment. In addition, Husband argued that Bramblett's objection to the associate judge was effectively withdrawn when he nonsuited his counter-petition. Husband therefore argued that the associate judge had jurisdiction to enter the final decree and that Wife had therefore not demonstrated that the decree was void.

### C. The Recusal Hearing

After Judge Strathmann declined to grant the recusal motion, she forwarded it to the

4

regional presiding judge, who assigned 394th District Court Judge Roy Ferguson to hear the matter.[2] At the hearing, Wife testified to the series of events that we describe above. Bramblett also testified at the hearing, expressing his contrary opinion that there was no defect in the annulment proceedings that would render the annulment decree void. He also testified that he waived any objection he may have had to the associate judge hearing the matter when he voluntarily appeared before the associate judge at the annulment hearing, and when he subsequently approved and consented to the parties' agreed-upon annulment decree. Bramblett further testified that no one had previously challenged the validity of the annulment decree prior to Wife filing her recusal motion.

Following arguments pertaining solely to the validity of the annulment decree, Judge Ferguson denied the motion. Judge Strathmann thereafter issued a Final Decree of Divorce in Wife and Husband's case on December 1, 2017. This appeal followed.

## II. ISSUES ON APPEAL

In her appeal, Wife does not challenge any of Judge Strathmann's substantive rulings in the final divorce decree. Instead, in related issues, Wife contends that it was error to deny her recusal motion, contending that Judge Strathmann and Bramblett were still married at the time of her trial, as their annulment decree was void for the following three reasons: (1) Judge Strathmann's counter-petition for annulment did not allege fraud, and instead alleged a "mutual mistake," thereby negating jurisdiction as a mutual mistake cannot be a basis for an annulment; (2) the associate judge who signed the annulment decree lacked authority to sign the decree due to

---

[2] Rule 18a of the Texas Rules of Civil Procedure provides that if the respondent judge does not sign an order of recusal upon receiving a motion to recuse, he or she must "sign and file with the clerk an order referring the motion to the regional presiding judge," who in turn must rule on the motion or assign a judge to rule on it. TEX.R.CIV.P. 18a(f)(1)(B).

5

Bramblett's failure to withdraw his objection to having an associate judge hear the matter; and (3) the annulment was based on Judge Strathmann's pleading, which she incorrectly labeled as a "counter-petition" for annulment, when it should have been labeled as a first amended petition.

Husband counters that we should decline to hear the merits of Wife's arguments regarding the validity of the annulment decree as (1) Wife's brief did not contain adequate citations to the record; (2) Wife did not provide the Court with a complete record of the trial proceedings in her divorce; (3) Wife's motion to recuse was not timely filed; and (4) Wife lacks standing to challenge the validity of the judge's annulment decree. Alternatively, Husband contends that even if we were to consider the merits of Wife's arguments, we should conclude that the annulment decree was not void, and that Judge Strathmann and Bramblett were therefore not married at the time of the parties' trial.

### III. STANDARD OF REVIEW AND APPLICABLE LAW

A Texas judge may be removed from a case if he or she is (1) constitutionally disqualified, (2) subject to a statutory strike, (3) subject to statutory disqualification, or (4) subject to recusal under rules promulgated by the Texas Supreme Court. *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 249-50 (Tex.App.--El Paso 2012, no pet.), *citing Gaal v. State*, 332 S.W.3d 448, 452 (Tex.Crim.App. 2011). Rule 18b of the Texas Rules of Civil Procedure lists the various grounds that require a judge to recuse from a proceeding. TEX.R.CIV.P. 18b. As set forth above, Rule 18b(b)(8) of the Texas Rules of Civil Procedure provides that a "judge must recuse in any proceeding in which . . . the judge or the judge's spouse . . . is acting as a lawyer in the proceeding." TEX.R.CIV.P. 18b(b)(8).

We review an order denying a motion to recuse a judge under an abuse of discretion standard, affirming the lower court's denial so long as it is within the zone of reasonable

6

disagreement. *See Nairn*, 366 S.W.3d at 250, *citing Gaal*, 332 S.W.3d at 456; *see also Kemp v. State*, 846 S.W.2d 289, 306 (Tex.Crim.App. 1992). A trial court only abuses its discretion if it acts without reference to any guiding rules or principles, that is, if the trial court's act was arbitrary or unreasonable. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). In reviewing the lower court's decision denying a recusal motion, we consider the totality of the evidence and information presented at the recusal hearing to determine if the record reveals sufficient evidence to support the court's decision. *Nairn*, 366 S.W.3d at 250.

## IV. DISCUSSION

### A. Briefing waiver and sufficiency of the appellate record

As a preliminary matter, we address Husband's two issues regarding Wife's alleged violation of the Texas Rules of Appellate Procedure. First, Husband argues that Wife's appeal should be denied as the brief initially filed by Wife did not contain proper citations to the record. *See* TEX.R.APP.P. 38.1(f) (requiring appellant's brief to contain a clear and concise argument for the contentions made, "with appropriate citations to authorities and to the record."). We note, however, that Appellant filed an amended brief that cured any defect, and we therefore reject that argument.

Husband next contends that Wife's appeal should be denied because she requested only a partial record of the trial court proceedings but failed to follow the procedure for a partial record appeal. TEX.R.APP.P. 34.6(c)(1) (providing that an appellant who only requests a partial reporter's record must provide a statement of the points or issues to be presented on appeal). Husband further contends that without the entire record, Wife cannot demonstrate that Judge Strathmann did in fact evidence a bias against her at trial, or in other words, that she was harmed by the denial of her motion. Wife's recusal motion, however, did not focus on whether Judge Strathmann was biased

7

against her, but rather focused on a mandatory ground for recusal. As our review is limited to that sole issue, we do not believe that our review of Wife's appeal is hindered by any failure to designate the entire trial reporter's record on appeal, or by any failure to provide a statement of the points or issues to be presented on appeal.

With those issues aside, Husband raises two more procedural hurdles. He claims the motion to recuse was not timely filed, and that Wife lacks standing to pursue a claim collaterally attacking Judge Strathmann's and Bramblett's prior annulment decree. Assuming arguendo that the motion to recuse was timely filed, we address standing.

### B. Standing

Standing is a prerequisite to subject-matter jurisdiction, and "subject-matter jurisdiction is essential to a court's power to decide a case." *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 444 (Tex. 1993). Standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Because standing is a component of subject-matter jurisdiction, a party may raise a challenge to the other party's standing for the first time on appeal. *See id.* at 849, *citing Tex. Ass'n of Bus.*, 852 S.W.2d at 445. Whether a party has standing to raise a claim, and consequently whether a court has jurisdiction to hear the party's claim, is a question of law that an appellate court reviews de novo. *McFadin v. Broadway Coffeehouse, LLC*, 539 S.W.3d 278, 282 (Tex. 2018), *citing Naylor*, 466 S.W.3d at 787.

As set forth above, Wife's motion to recuse was based solely on her allegation that the annulment decree that Judge Strathmann and Bramblett obtained some nine years earlier was void, and that the judge and Bramblett were therefore still married at the time of her trial. In effect,

8

although Wife was not a party to the judge's annulment proceeding, she seeks to collaterally attack Judge Strathmann's annulment decree and have a court determine that it was void. Dispositive to our analysis is whether Wife has standing to make this attack. We determine that she does not.

In general, a party to a final judgment may collaterally attack the judgment at any time after the time for filing an appeal has expired; however, in light of the policy favoring the finality of judgments, such attacks are disfavored and may only be made on the ground that the judgment was void, rather than merely voidable.[3] *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272-274 (Tex. 2012) (recognizing that this rule "strikes a reasonable balance between the need for finality of judgments and the requirement that the power underlying judicial authority must be based on a litigant's fair opportunity to be heard"); *see also Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005). Therefore, parties to a divorce or annulment proceeding may collaterally attack a final judgment in their own case on the ground that it was void. *See, e.g.*, *In Interest of E.P.*, No. 02-16-00049-CV, 2016 WL 4141041, at *8 (Tex.App.--Fort Worth Aug. 4, 2016, no pet.) (mem. op., not designated for publication) (recognizing that a party may only attack an annulment decree on the ground that it is void, rather than merely voidable); *see also Ramsey v. Ramsey*, 19 S.W.3d 548, 552-553 (Tex. App.--Austin 2000, no pet.) (recognizing that "a divorce decree that is valid on its face and has not been appealed cannot be set aside in a subsequent suit by collateral attack"). However, a somewhat different analysis applies when a non-party seeks to collaterally attack a final judgment.

---

[3] A judgment is void, rather than merely voidable, when it is apparent that the court rendering judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005), *quoting Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).

It is well-established that an individual who is not a party to a final judgment lacks standing to collaterally attack the judgment, unless the individual can establish their interests are directly and necessarily affected by the judgment itself. *See In re Ocegueda*, 304 S.W.3d 576, 580-581 (Tex.App.--El Paso 2010, pet. denied) (attorneys who were non-parties to expunction proceeding lacked standing to collaterally attack expunction order). Having an "interest affected by the judgment" means having an interest in the subject matter to which the judgment relates. *Grynberg v. Christiansen*, 727 S.W.2d 665, 666 (Tex.App.--Dallas 1987, no writ). "Examples of nonparties whose interests are affected by a judgment are persons having an interest in land (such as an owner, a cotenant, or a person in lawful possession) who are not made a party to an action involving the land . . . a holder of a junior lien who has been ignored in a suit foreclosing a prior lien on the same property, and a creditor whose rights are prejudiced by a judgment pursued for the purpose of delaying, hindering, or defrauding the creditor." *Id.* at 667, *citing Dean v. First National Bank of Athens*, 494 S.W.2d 222, 226 (Tex.Civ.App.--Tyler 1973, writ ref'd n.r.e.). Conversely, having only a tangential or indirect interest in the judgment is insufficient to bestow standing upon a non-party for purposes of allowing a collateral attack on the judgment. *See, e.g., id.* at 667 (party lacked standing to collaterally attack a final judgment that was rendered in another proceeding, where his only asserted interest in doing so was to avoid the inconvenience of attending oral depositions and producing documents); *In re Ocegueda*, 304 S.W.3d at 580-81 (attorneys could not establish that they had standing to collaterally attack an expunction order where they were neither parties to the original expunction proceeding nor did they represent any of the parties to the proceeding).

In accord with these general principles, several courts, including at least three of our sister courts in Texas, have held that a non-party to a divorce proceeding lacks standing to collaterally attack a divorce decree where the individual had no preexisting interest in the divorce proceeding

itself. *See, e.g., Gilliam v. Riggs*, 385 S.W.2d 444, 446-47 (Tex.Civ.App.--Beaumont 1964, writ dism'd w.o.j.) (appellant, who was not a party to a divorce proceeding and was unable to demonstrate that he had any interest in the divorce, had no right to challenge the validity of the divorce judgment); *Perry v. Copeland*, 323 S.W.2d 339, 344 (Tex.Civ.App.--Texarkana 1959, writ dism'd) (recognizing that daughter had no right to collaterally attack her father's divorce decree); *Kieke v. Cox*, 300 S.W.2d 309, 311 (Tex.Civ.App.--San Antonio 1957, no writ) (second husband of one of the parties to a divorce judgment that was regular and final on its face lacked sufficient interest to collaterally attack the same); *see also Brown v. United States*, 196 F.2d 777, 778 (D.C. Cir. 1952) (holding that a plaintiff's claim to a decedent's pension benefits by virtue of being named as an alternate beneficiary did not grant her standing to contest the validity of the decedent's widow's divorce from her previous husband); *George v. King*, 156 S.E.2d 615, 615-18 (Va. 1967) (where party seeking to contest a divorce decree was a stranger to the latter proceedings and had no pre-existing interest to be adversely affected by the divorce decree he had no legal right to collaterally attack that decree); *Bair v. Bair*, 415 P.2d 673, 674 (Idaho 1966) (collecting cases, and recognizing that "[o]nce a divorce decree is final, it should not be disturbed by strangers who had no preexisting rights or interests adversely affected by such judgment").

As the Idaho Supreme Court recognized, "The parties to the divorce and others who have since relied on the [validity of] the decree are entitled to rely thereon and plan their lives accordingly without fear that at some future date they will be found to have acted bigamously or that their children will become bastardized." *Id.* at 674. We have no doubt that this same principle applies in annulment proceedings, as the parties to an annulment have the same interest in ensuring the finality of their annulment decree. *See generally In Interest of E.P.*, 2016 WL 4141041, at *8 (recognizing the need for the finality of judgments in annulment proceedings).

11

In the present case, although Husband has addressed the issue of whether Wife had standing to attack the validity of Judge Strathmann's annulment decree, Wife has not responded by asserting that she had any pre-existing or direct interest in the judge's annulment proceedings that would give her standing to do so. Nor do we find any evidence in the record to support a finding that Wife has any such interest. Accordingly, we conclude that Wife lacks standing to collaterally attack the validity of Judge Strathmann's annulment decree, and that this Court consequently lacks jurisdiction to consider the merits of her attack on the decree.

Having agreed with Husband on the standing question, we need not address the merits of the claim that the annulment decree is void. Nor should this Court's recitation of the parties' allegations be taken in any way to suggest that the annulment decree is void. That is not for us to decide.

Wife's Issues One through Three are Overruled.

## V. CONCLUSION

In light of the above, we conclude that the trial court did not abuse its discretion in denying Wife's motion to recuse, and we therefore affirm the trial court's judgment.

JEFF ALLEY, Chief Justice

February 5, 2020

Before Alley, C.J., Palafox, J., and Barajas, Senior Judge
Barajas, Senior Judge, (Sitting by Assignment)

12